WILLIAM C. CLUSTER AND PHYLLIS I. CLUSTER,
ETC. ET AL. *v.* EDITH MAE COLE

[No. 505, September Term, 1973.]

*Decided May 20, 1974.*

The cause was argued before ORTH, C. J., and MORTON and GILBERT, JJ.

*Samuel Blibaum,* with whom was *Gerald N. Klauber* on the brief, for appellants.

*James K. Carmody,* with whom were *Serio, Hopper & Carmody* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

This is an appeal from a judgment n.o.v. granted by the presiding judge in the Circuit Court for Anne Arundel County after the jury was unable to reach a verdict. Appellants contend that the trial court erred in admitting into evidence a so-called *res gestae* statement of an unidentified witness and in finding that their deceased daughter was guilty of contributory negligence.

This suit for damages due to negligence arose from an accident which occurred at approximately 8 p.m. on August 29, 1970, causing the death one week later of appellants' twelve-year old daughter, Terri Lee Cluster. It is admitted that the driver of the car which struck Terri was Edith Cole. Mrs. Cole was the mother of the car's owner, Shirley Semon.

As a result of the accident, William and Phyllis Cluster, as the surviving parents of Terri, and William Cluster as administrator of her estate, filed suit against Edith Cole and Shirley Semon.

After receiving all the evidence, the court granted a directed verdict in favor of Shirley Semon as the testimony adduced at trial indicated that Mrs. Cole was operating the car on her own business and not her daughter's. Appellants did not object to the directed verdict in favor of Shirley Semon. Accordingly, its propriety is not before us on appeal. Appellants, however, earnestly contend here that the grant of a judgment n.o.v. for Edith Cole was clearly erroneous in light of all the competent evidence before the trial judge.

Shelly Wolfe, a fifteen-year old friend of the deceased, testified that she left the Clusters' home with Terri at about 7:30 p.m. on the evening of August 29. Both girls were riding bicycles and they left in order to get Terri's tire repaired at a neighborhood gas station. The station was located on the other side of Crain Highway. Shelly did not cross the road but instead waited for her friend on top of a nearby embankment. From her vantage point she had a good view of the traffic below going in both directions.

She saw Terri go over to the station and then observed Terri begin her return across the road, pushing her bicycle and walking. The witness remembered Terri looking up and down the road as she came out of the station and before beginning to cross. She further testified that the deceased made it halfway over, reaching the center line, without incident. Part way across the remainder of the highway, Terri was hit by a two-door Plymouth sedan driven by Mrs. Cole. Terri was immediately removed by ambulance to North Arundel Hospital and subsequently transferred to University Hospital suffering extensive head and body injuries. She died a week later without regaining consciousness.

Throughout her testimony Shelly maintained that the headlights of the car which struck the deceased were not on. At the time she and Terri left the Clusters' home, approximately a half-hour before the accident, she stated that "it wasn't dark yet but it was just starting to turn dark a little bit." When asked on cross examination about the need for headlights at the time of the accident, she replied: "Well, it wasn't dark enough to have them on really." Shelly was unable to recollect whether or not Terri had walked across the first, or westbound, lane of traffic from between two cars.

William Cluster, Terri's father, testified that he first heard of the accident from Shelly when she raced to his home immediately afterwards. He ran to the accident site, arriving five to ten minutes after the occurrence. Questioned as to the lighting at the time he arrived there, Mr. Cluster responded that "it was starting to get dark then I believe

* * * it was just like Shelly said it wasn't dark enough at the time to really have headlights on * * * I didn't see any with headlights on."

As the investigating officer had apparently terminated his employment with the police force at the time of trial, the parties stipulated the admission of the police report and an appended diagram. The point of impact was placed ten feet from the center line in the eastbound lane outside of any intersection or crosswalk and a hundred feet east of Furnace Branch Road. The report noted the lighting conditions as "dusk, poor illumination." The police officer also made a statement, apparently contained in the police report, of the accident: "Operator one [Mrs. Cole] was proceeding east on Crain Highway when she observed the bicyclist directly in the path of her vehicle and was unable to stop in time to avoid striking the same."

Mrs. Cole testified that she was proceeding eastbound on Crain Highway returning to her daughter's residence in Glen Burnie after visiting her own home in Baltimore. In her direct testimony she maintained that something hit her car just after she passed under the automatic signal light at the intersection of Crain Highway and Furnace Branch Road. When initially called by the plaintiffs as an adverse witness, Mrs. Cole had said that the impact occurred "approximately before we went under the light" at the same intersection. She repeatedly testified that her headlights were on at the time of the accident, noting that those of other cars in traffic were also on. Mrs. Cole denied driving faster than the applicable speed limit of 30 m.p.h asserting that traffic was heavy. Visibility at the time of the accident was good, according to her. Mrs. Cole acknowledged that Crain Highway is a straight road after passing the intersection and that there is nothing to obstruct the view. Mrs. Cole maintained that from the intersection up to the time of impact, she was attentively looking straight ahead. She denied having seen Terri, or any other person, in the roadway ahead of her prior to the accident.

After impact, Mrs. Cole stopped abruptly in the middle of the lane and ran out of the car to the back where she

observed the body of Terri lying nearby. On cross examination she was unable to explain her precipitous reaction on hearing the unexpected noise in the front of the car beyond stating that "it was something hit the car * * * you can tell * * * in the driving."

Mrs. Cole said that on discovering the child lying in the roadway, she started to scream hysterically and knelt over the body. She testified that while so kneeling, a "colored man" came up to her and "He said lady, please, don't touch the little girl. He said it wasn't your fault. He said she run between the cars." Neither Mrs. Cole nor anyone else obtained the "colored man's" name. Mrs. Cole's recollection of the unidentified "colored man's" statement was admitted into evidence by the trial judge over appellants' strenuous objections.

In permitting Mrs. Cole to state to the jury what the unidentified witness had allegedly told her just after the accident, the trial judge announced that he was doing so under the doctrine of *res gestae*. While the term *res gestae* has been roundly criticized by respected authorities,[1] the use of the term is firmly imbedded in the case law of this State. *Estep v. State*, 14 Md. App. 53, 67 (see cases cited therein), *Honick v. Walden*, 10 Md. App. 714, *Harnish v. State*, 9 Md. App. 546. The formula governing *res gestae* has been enunciated by the Court of Appeals and this Court many times. After discussing prior decisions of the Court of Appeals, this Court, in *Reckard v. State*, 2 Md. App. 312, 316-317, announced:

> "As otherwise expressed, whether a declaration is a part of the *res gestae* depends upon whether the declaration represented the facts talking through the party or whether the party was talking about

---

1. Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae*, 31 Yale L.J., 229-239; *McCormick on Evidence* § 274. In 6 Wigmore, *Evidence*, § 1767, it is stated: "The phrase *'res gestae'* is, in the present state of the law, not only entirely useless, but even positively harmful. It is useless, because every rule of evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in the terms of that principle. * * * It should never be mentioned."

the facts, since *res gestae* comprehends a situation which presents an occurrence sufficient to produce a spontaneous and instinctive reaction under such circumstances as to show a lack of forethought or deliberate design on the part of the declarant.

To constitute *res gestae* an utterance need not in all strictness be contemporaneous, in the sense of simultaneous, with the principal act; it may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and be dissipated by meditation.

The point is not so much the lapse of time or change of place as the continuance of a situation which insures that what is said is, in fact, a spontaneous reaction to the occurrence, rather than an independent, preconceived action of the speaker's will."

There is no inflexible rule in determining whether a certain statement or declaration constitutes a part of the *res gestae;* the question of admissibility depends upon the facts and circumstances of each particular case. *Patterson v. Baltimore Ohio R. R.*, 133 Md. 276; *Honick v. Walden, supra.* Professor Edmund M. Morgan, in discussing the *res gestae* principle, explicated the following analysis:

"When a witness in court offers evidence regarding a matter within his own knowledge, he is under oath and subject to cross-examination. If he reports the utterance of another, he is, as to the fact and content thereof, in exactly the same situation as if he were reporting any non-verbal event of which he has knowledge. His oath and the cross-examination, however, are guaranties only that he is himself speaking the truth, and not at all that the person whose utterance he is reporting was speaking the truth. When the fact and content of such person's utterance, regardless of its truth, are relevant and material, there is no reason for excluding the testimony of the witness concerning them. But

when the utterance is offered for its truth, then the witness is testifying only to its fact and content, and the utterer is testifying to the matter asserted in the utterance. As the utterer is not under oath and is not subject to cross-examination, his testimony is ordinarily deemed too untrustworthy to be received. If it is to be admitted, it must be because there are some good reasons for not requiring the appearance of the utterer and some circumstance of the utterance which performs the functions of the oath and the cross-examination." Morgan, *supra* note 1, at 230-231.

Here, the statement of the unidentified witness was being offered for its truth. Obviously, it was not made under oath and the absent witness, of course, was not subject to cross examination. While the nonidentity of the "colored man" may have been a good reason for not requiring his appearance as a witness, we cannot find anything in his statement, or the circumstances under which it was given, that would make it so inherently trustworthy as to dispense with the oath and the right to cross examination.

We recognize that the admissibility of a *res gestae* statement is not necessarily precluded because it is self serving to the litigant offering it. *Shirks Motor Express v. Oxenham*, 204 Md. 626, 637, *Evans v. Buchanan*, 183 Md. 463, *Jones v. Dugan*, 124 Md. 346.

We cannot find, however, that the statement and the circumstances under which it was made, contained all the ingredients necessary to satisfy the *res gestae* formula. Certainly Mrs. Cole was in a highly emotional and hysterical state when she heard the words of the "colored man." According to Mrs. Cole: "I was down on my knees aprayin and acryin and all, the police came. It wasn't but just a few minutes." There is no showing, however, that Mrs. Cole's emotional state was shared by the unidentified witness. In fact, as related by Mrs. Cole, the statement did not appear to have been the product of nervous excitement and compulsion — made up of words "thrown" from the witness by what he had just seen. Rather, the statement would appear to have

been a calm, comforting, reflective narration of what the witness had observed. We do not think the unidentified witness's declaration amounted to the facts talking through the party but simply was made in a setting where the witness was talking about the facts. It is true that the statement was made immediately after the accident, but immediacy is not necessarily the equivalent of spontaneity. Moreover, a substantial part of the statement contained an opinion or conclusion — "He said it wasn't your fault" — which, standing alone, was clearly inadmissible, this being an issue for determination by the jury.

Thus, under all the circumstances, we are of the opinion that it was plain error to admit the statement; and it was not harmless error as contended by appellee. With the statement of the unidentified witness out of the case, we think it is clear that it cannot be said that the victim, Terri Cluster, was guilty of contributory negligence as a matter of law, and, accordingly, the granting of the judgment n.o.v. was improper.

In reviewing the granting of a motion for judgment n.o.v., we are bound to consider all the evidence together with inferences fairly deducible therefrom in the light most favorable to the party against whom the motion is made. The granting of the motion was, in effect, a granting of the earlier motion for a directed verdict. *See, Reid v. Pegg,* 256 Md. 289, *Burns v. Goynes,* 15 Md. App. 293, *cert. denied,* 410 U. S. 938, *Miller v. Michalek,* 13 Md. App. 16.

In reviewing the evidence, consideration must be given to the presumption of due care which normally exists in favor of a deceased plaintiff. This presumption is merely legal recognition of the fact that reasonable persons do not willingly abandon a position of safety for an oncoming danger at the risk of life and limb. *Gresham v. Commissioner of Motor Vehicles,* 256 Md. 500, *Nizer v. Phelps,* 252 Md. 185, *Grier v. Rosenberg,* 213 Md. 248, *Young v. Dietzel,* 13 Md. App. 159. In the instant case, the decedent was entitled to consideration of the presumption in her favor.

We believe there was insufficient countervailing evidence

produced at trial by the appellee to negate the presumption. The testimony of Shelly Wolfe, the sole eyewitness to the accident, that decedent looked up and down the highway before beginning to cross was unrebutted. There was evidence that Mrs. Cole, the driver, did not have her headlights on as the conditions of dusk and poor lighting may have warranted. She admitted that a driver's view from the nearby intersection to the point of impact was straight and unobstructed. Her recollection as to the point of impact was self-contradictory. The weight of the evidence and the credibility of the witness are matters within the purview of the jury. *Williams and McClelland v. State*, 5 Md. App. 450, 467. At the very least, the issue of due care on the part of the decedent should have been submitted to the jury under the facts of this case. *Bratton v. Smith*, 256 Md. 695. It is well established that where there is conflicting evidence as to material facts, its resolution lies with the finder of fact.

The cases cited by appellee in support of the grant of judgment n.o.v. are not, in our opinion, apposite. *Domeski v. Atlantic Refining Co.*, 202 Md. 562, is factually distinguishable from the case at bar. There, a pedestrian was found to be contributorily negligent as a matter of law when he inattentively walked across a heavily-travelled highway. The so-called "dart-out" cases involving children running unheedingly into a street are likewise inapplicable here. See *Dorough v. Lockman*, 224 Md. 168, *Cocco v. Lissau*, 202 Md. 196.

Having concluded that the decedent was not contributorily negligent as a matter of law, the judgment n.o.v. must be reversed and a new trial granted.

> *Judgment reversed; case remanded for a new trial.*
> *Costs to be paid by appellee.*