28 Md. App. 180 (1975)
344 A.2d 139
DANIEL L. BARTELL
v.
EILEEN BARTELL.
No. 88, September Term, 1975.
Court of Special Appeals of Maryland.
Decided September 10, 1975.
*181 The cause was argued before ORTH, C.J., and MENCHINE and MOORE, JJ.
Alan I. Baron, with whom were Peter F. Axelrad and Frank, Bernstein, Conaway & Goldman on the brief, for appellant.
Joseph S. Kaufman, with whom were Arnold M. Weiner and Steven P. Resnick on the brief, for appellee.
MOORE, J., delivered the opinion of the Court.
The principal question presented on this appeal is whether the appellant-husband "procured" his own absence within the meaning of Maryland Rule 413 and thus rendered inadmissible his deposition  duly taken in Edmonton, Alberta, Canada  at an evidentiary hearing before the Circuit Court for Baltimore County (Raine, J.) to determine the question of lack of personal jurisdiction, raised as a preliminary objection under Maryland Rule 323. The Chancellor excluded the deposition. He also held that a written communication to appellant's wife and one to his professional associate were inadmissible. We find reversible error in these rulings.

I

Factual and Procedural Background.
Appellant, Daniel L. Bartell, D.D.S., and his wife, Eileen, *182 were married in Baltimore on December 21, 1952 and had two daughters, 18 and 15 years of age. On June 1, 1974, without any prior notice to or communication with his wife, Dr. Bartell left her and the children. A letter from him to Mrs. Bartell was hand-delivered to her by a stranger after his departure.[1]
On July 25, 1974, Mrs. Bartell filed a bill of complaint for alimony, support and custody, based upon alleged adultery, abandonment and desertion. Simultaneously, she sought and obtained an Ex Parte Injunction[2] and an Order for the appointment of a special process server on the ground that the husband was "temporarily residing in Alberta, Canada." Dr. Bartell was subsequently served on August 8, 1974 in the Town of Slave Lake, Province of Alberta, Canada and thereafter challenged, by Motion Raising Preliminary Objection, the court's jurisdiction over his person. A supporting affidavit recited inter alia his residence in the Town of Slave Lake prior to the institution of his wife's action, that he intended to remain permanently in Alberta and not to return to Maryland, and that he was a licensed dentist in Canada and had established dental practice in the Town of Slave Lake.
After an apparent conference in Chambers with counsel for the respective parties, Judge Raine filed a Memorandum and Order on September 30, 1974 in which he ruled that it was inappropriate, in the face of objection, to decide the jurisdictional issue on the basis of affidavits. A suggestion by Dr. Bartell's counsel that he be deposed in Canada was rejected. Judge Raine's Memorandum stated:
"The deposition rules do cover the deposition of parties as well as mere witnesses, but the use of any deposition is not permitted where the witness *183 or party is out of state and where the absence is procured by the party offering the deposition. Maryland Rule 413. Consequently there will have to be an evidentiary hearing on the question of the Respondent's domicile at which time the Respondent will have to appear in person to testify if he wishes to introduce his own testimony on the issue of his domicile. When he does so appear he is not subject to being served with process, Maryland Rule 104g...." (Emphasis added.)
An evidentiary hearing on the "sole question of Dr. Bartell's domiciliary status" was thereafter scheduled for December 2, 1974. In mid-November, however, counsel for Dr. Bartell filed (1) a notice for the taking of his deposition in Edmonton, Canada on November 19, 1974 and (2) a motion for the appointment of a Commissioner to take testimony. Paragraph 5 of the latter motion stated:
"It is both necessary and convenient for such commission to be issued by this Court in that this Court does not have personal jurisdiction over Daniel L. Bartell sufficient to require his attendance in Maryland and Daniel L. Bartell cannot and will not be present at the scheduled hearing." (Emphasis added.)
Counsel for Mrs. Bartell responded with alacrity, filing a Motion for Protective Order under Md. Rule 406 a (10) on the day the deposition notice was received. "Hardship, oppression or undue expense" was claimed because of the cost of transportation and lack of funds to employ counsel. The Chancellor (a) signed an Order that the clerk issue the Commission to take testimony as prayed and (b) denied the wife's motion for a Protective Order, with the following hand-written disposition, dated November 13, 1974:
"Motion Denied, Court repeats its ruling that deposition of Dr. Bartell will not be admitted. In the event of a change in parties' circumstances affecting this ruling, the present motion may be resubmitted & reconsidered." (Emphasis added.)
*184 Dr. Bartell's deposition was thereafter taken by his local counsel in Edmonton, Mrs. Bartell not being present nor represented by counsel. At the hearing on December 2, 1974 on the husband's preliminary objection, his Maryland counsel presented a written motion to "Rescind Prior Order And To Admit In Evidence The Deposition of Daniel L. Bartell...." The motion was denied and the testimony of Mrs. Bartell and five other witnesses was taken, with counsel for Dr. Bartell participating. The matter was held sub curia and on December 5, 1974, Judge Raine denied the husband's motion in a memorandum opinion. With respect to the exclusion of the deposition, the Chancellor wrote:
"The Maryland Rules govern the use of depositions of parties as well as other witnesses. A party can use the deposition of an adverse party for any reason, but the Rules do not permit a party who has procured his own absence from the state to remain without the state and litigate his cause by means of a foreign deposition. In this case it is clear that on or shortly after June 1, 1974 the Respondent left the State of Maryland of his own volition, and there is no known reason why he could not return to Maryland to testify." (Emphasis added.)
The evidence adduced on behalf of the wife at the hearing was then summarized and the court's memorandum concluded:
"Where facts of this nature are shown the burden shifts to the person who affirmatively asserts that there has been a change in his domiciliary status. With no testimony from the Respondent in this case the burden has not been met. If this conclusion is factually incorrect the reluctant Respondent has only himself to blame." (Emphasis added.)
Appellant did not thereafter file an Answer to the Bill of Complaint and a Decree Pro Confesso was entered on December 31, 1974. The Examiner-Master, after the taking of testimony ex parte, concluded that abandonment had *185 been established[3] and recommended an award of alimony of $250 per week and the sum of $100 per week for maintenance and support of the minor daughter, Wendy. On February 20, 1975, Judge Raine signed a Decree awarding alimony and support in the amounts recommended, granting custody of the minor child to the wife and ordering that the property and assets of Dr. Bartell, located within the State of Maryland, would be liable for the payment of alimony and support and enjoining their removal or other disposition.[4]
On this appeal, we are importuned by both sides to resolve the ultimate issue, viz., whether or not the trial court properly exercised personal jurisdiction over Dr. Bartell. Such jurisdiction did not attach unless appellant was a Maryland domiciliary at the time the suit was filed and at the date of service in Canada. See Code, Cts. & Jud. Proc. Art. Sec. 6-102 (1974); Dackman v. Dackman, 252 Md. 331, 250 A.2d 60 (1969). For the reasons next stated, we do not decide that question.

II

Proof of Domicile and of Change of Domicile.
In his carefully constructed Memorandum, the Chancellor summarized as follows the evidence adduced at the evidentiary hearing on the question of Dr. Bartell's domicile:
"The Complainant has established that the Respondent has an ownership interest in real estate and personal property in Maryland. The Respondent resided in the Maryland home in Baltimore County until June 1, 1974, and he gave that as his address and place of residence when he last filed required tax returns. The Respondent is a *186 registered voter in Baltimore County, having last voted in the General Election in November, 1972. The Respondent has been registered with the State Board of Dental Examiners since 1955, and renewed the registration in 1973 for the year 1974. The Respondent still holds a valid Maryland license to operate a motor vehicle. On June 1, 1974 the Respondent was the plaintiff in a tort suit that has subsequently been settled. The Respondent is obligated to the Equitable Trust Company, a Maryland bank, under a lease agreement for dental equipment, although presumably this equipment has been transferred to the purchaser of the Respondent's practice. Personal property such as some clothing, some records and a coin collection remain in the home where the Respondent resided."
These facts were characterized by the Chancellor as "traditional indicia of domicile" which, he concluded, supported the wife's claim that he was still legally domiciled in Maryland and shifted to the husband the burden of establishing a change in his domiciliary status.
Without necessarily entering the thicket of burden of proof and presumptions,[5] we think it correct to say that, in Maryland, where the issue of personal jurisdiction is contested, the party asserting such jurisdiction bears the burden of proving its elements by a preponderance of the evidence. Vitro Electronics v. Milgray Electronics, Inc., 255 Md. 498, 507, 258 A.2d 749 (1969). It is also well settled in Maryland that a person's domicile remains the same until he acquires a new residence with an intention to remain there indefinitely and that the burden of proof rests on the party who claims that a change of domicile has taken place. Comptroller v. Lenderking, 268 Md. 613, 618, 303 A.2d 402 (1973), citing with approval 1 Restatement (Second) of Conflict of Laws, § 19, at 78 (1971); Staley v. Staley, 251 Md. 701, 705, 248 A.2d 655 (1968).
*187 In the instant case, therefore, Dr. Bartell must prove that his domicile changed from Maryland to Canada before the filing of suit on July 25, 1974. Domicile is defined in Maryland as the "place where a man has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom...." Shenton v. Abbott, 178 Md. 526, 15 A.2d 906 (1940). The most important component of this definition is "intent." Bainum v. Kalen, 272 Md. 490, 497, 325 A.2d 392 (1974). While intent regarding domicile "may be more satisfactorily shown by what is done than by what is said," Wagner v. Scurlock, 166 Md. 284, 292, 170 A. 539 (1934), in this instance appellant has been so severely restricted by the court's evidentiary rulings  particularly with respect to the use of a deposition  that his proof of intent is almost totally absent. We turn now to the question whether as Judge Raine stated, Dr. Bartell "has only himself to blame."

III

Admissibility of Husband's Deposition.
Maryland Rule 413 a 3 (2) prescribes the conditions for the use of a deposition made by an unavailable party or witness:
"The deposition of a witness, whether or not a party, may be used by any party for any purpose against any other party who was present or represented at the taking of the deposition or who had due notice thereof, if the court finds:
* * *
(2) That the witness is out of the State, unless it appears that the absence of the witness was procured by the party offering the deposition." (Emphasis added.)
The issue presented here is, therefore, whether the Chancellor properly refused to accept appellant's deposition on the grounds that he had "procured" his own absence. As already indicated, we conclude that this was error.
This language of the Rule has not heretofore been *188 construed in Maryland; and there is a paucity of other state cases involving interpretations of similar provisions. See Kono v. Auer, 458 P.2d 661 (Haw., 1969); King v. International Harvester Co., 181 S.E.2d 656 (Va. 1971). Decisions of federal courts are somewhat more numerous and offer helpful guidelines because of the similarity between Maryland and federal discovery rules. Snowhite v. State, Use of Tennant, 243 Md. 291, 308-309, 221 A.2d 342 (1966). The federal deposition rule provides, in pertinent part, that:
"[t]he deposition of a witness, whether or not a party, may be used by any party for any purpose if the Court finds ... that the witness is at a greater distance than 100 miles from the place of trial or hearing ... unless it appears that the absence of the witness was procured by the party offering the deposition." Fed.R.Civ.Pro. 32 (a) (3) (B). (Emphasis added.)
In a leading federal case, the term "procured" was defined by Judge Chesnut, writing for the United States District Court for the District of Maryland, Weiss v. Weiner, 10 F.R.D. 387 (1950). There the defendant in a breach of contract action had been a resident of Maryland for 2 years before the suit was filed but had been residing in Florida for many months prior to trial, and did not appear for trial. The plaintiff moved for a new trial alleging error in the admission into evidence, at the instance of defendant's counsel, of the defendant's deposition which had been taken in Baltimore long before the trial took place. Rule 26 d 3, the predecessor of the current rule quoted above, then governed, the language being identical. Rejecting plaintiff's contention that the defendant had "procured" his own absence, Judge Chesnut stated at p. 389:
"The word `procured' in this context would seem to imply that a party had collusively instigated or induced a witness to remove himself from being subjected to a subpoena to testify at the trial, or at least had unfairly and for an improper purpose *189 deliberately absented himself shortly before the trial from the jurisdiction so he could not be examined." (Italics supplied.)[6]
Again, in 1962, the United States District Court for the District of Maryland had occasion to construe the same rule in a trade secrets case wherein objection was made to the depositions of corporate officers who were residing at a distance substantially greater than 100 miles from Baltimore at the time of trial. Judge Northrop, now Chief Judge, turned aside the contention that the absence of the witnesses had been "procured." Houser v. Snap-On Tools Corp., 202 F. Supp. 181 (1962). Citing Weiss v. Weiner, supra, Judge Northrop observed (p. 189):
"However, procuring absence and doing nothing to facilitate presence are quite different things, and here we have no showing or allegation that Snap-On actively took steps to keep the deponents from setting foot in the courtroom."
Limiting the application of Weiss v. Weiner only to a defendant's proof was held to be erroneous in Richmond v. Brooks, 227 F.2d 490 (2nd Cir.1955) where a California resident sued her former husband in New York to collect unpaid loans. At the trial, the plaintiff offered her deposition as her proof. The trial court refused to receive it, holding that the defendant was entitled to require the presence of the plaintiff as part of her case and the opportunity to cross-examine her before the jury. The action was thereafter dismissed for failure of proof. The Court of Appeals reversed, in an opinion by Chief Judge Charles E. Clark, the distinguished draftsman of the Federal Rules of Civil Procedure. He stated generally (p. 492):
"The tactical burden assumed by the plaintiff in proceeding to trial in her absence ... is likely to limit frequent resort to this course; but a suitor not *190 able to afford a New York trip should not be denied all remedy here. There is nothing in the general law to demand such a result; indeed the contrary has been the rule both in earlier federal law [citations omitted], and in the modern procedure of New York, where this action was first brought."[7]
With respect to the "unless ... procured" language of F.R. 26 d 3, Chief Judge Clark noted that the defendant objected under that section and advised the trial court that the plaintiff was in New York City with her husband during the Christmas holidays, prior to the start of the trial on January 17, 1955. The trial court made no ruling on the objection and the Court of Appeals stated obiter (p. 493):
"But no reason is apparent to justify a requirement that plaintiff must live in New York City  of course expensively, since that is the only mode of life there  awaiting the uncertain call of a case for trial or be penalized for a normal Christmas trip."
Placing principal reliance upon the foregoing authorities, the Supreme Court of the State of Hawaii held in a personal injury action that it was reversible error to exclude the deposition of the defendant who had moved to Canada between the time of the accident and the time of trial. Kono v. Auer. 51 Haw. 273, 458 P.2d 661 (1969), supra. In Kono the discovery rule subject to construction contained the same "unless ... procured" language as is contained in Maryland Rule 413 a 3 (2).
Standing in somewhat solitary splendor among the few adjudicated cases on this issue is the decision of the Supreme Court of the Commonwealth of Virginia in King v. International Harvester Company, 181 S.E.2d 656 (1971), supra, upon which Mrs. Bartell places principal reliance. The language of the Virginia deposition rule, in pertinent part, is *191 identical to the Maryland rule. The Court there held that the trial court had not erred in refusing to admit into evidence the deposition of the plaintiff, a resident of Florida, who had sustained accidental personal injuries in Virginia. As in Richmond v. Brooks, supra, the plaintiff in King failed to appear at the trial in Virginia for reasons unknown to his counsel. After a discussion of the principal cases in this area,[8] the Court determined that:
"When the absence of a witness is due merely to a preference to use his deposition rather than to testify orally at the trial, the rule does not permit of its use. Absence under such conditions is in effect `procured' by the party offering the deposition." (181 S.E.2d at 660).
On principle, we do not accept this construction of the rule and, upon authority, we find it unsupportable. Furthermore, we think the Court in King went far beyond the language of the rule when it also held that a party should not be allowed to use his own deposition except in the following circumstances:
"There is no intimation in the record that plaintiff's absence was caused by illness, age, infirmity or for any reason other than his own volition. His absence was the result of an act of `will' on his part. We construe a voluntary and unexplained absence as a `procured' absence." (181 S.E.2d at 661) (Emphasis added.)
Turning to the operative facts in the instant case, no action was pending nor, so far as can be ascertained because of the exclusion by the Chancellor of appellant's farewell letters, was any legal action in contemplation when Dr. Bartell left his family on June 1, 1974. The wife's action was *192 instituted some two months later and her motion for sequestration and special service of process conceded that he was at least "temporarily" residing in Alberta, Canada. The date of the evidentiary hearing was set by the court by letter in October for December 2, 1974, some four months after the filing of suit. The appellant's absence was not from a trial on the merits, but from a hearing on his own motion raising a preliminary objection concerning the court's exercise of personal jurisdiction. To paraphrase the language of Chief Judge Clark in Richmond v. Brooks, supra, "if [Dr. Bartell] chose so to proceed, he was taking a risk and [the plaintiff] had the advantage of no opportunity for the [defendant] to rebut [her] oral testimony," (227 F.2d at 492); and in the words of Judge Chesnut in Weiss v. Weiner, supra, "Presumably it was a disadvantage to the defendant himself not to have his own evidence heard by the [court]." 10 F.R.D. at 388.
These, however, were options appellant had a right to elect and risks he had a right to assume. We find no basis for the application of the word "procured" in the circumstances here present. We cannot equate the act of desertion by a husband of his wife and children with the procurement, by so doing, of his own absence within the meaning of Rule 413.

IV

Exclusion of Appellant's Writings.
In the Memorandum which accompanied the denial of Dr. Bartell's Motion Raising Preliminary Objection, the Chancellor made the following ruling with respect to hand-written notes addressed by appellant to his wife and to his professional associate, Dr. Sanford Biars, prior to his departure:
"When the Respondent left Maryland he left certain notes which were proffered by his attorney to show his intention to remain outside the state permanently. These notes were not shown to be *193 within any res gestae exceptions, and were excluded as being of a clearly self-serving nature."[9] (Emphasis added.)
We need not further fuel the controversy concerning the use of the phrase "res gestae."[10] The proper exception to the hearsay rule here applicable is "statements of design or plan" or "declaration of intent," this being the import of the excluded papers.
The self-serving nature of an out-of-court statement does not, of course, render it inadmissible. McCormick, Evidence § 290 (2d ed. 1972). Nor is spontaneity a necessary element of a declaration of intent or design as it is, of course, in the case of an excited utterance. Dean Wigmore states, 6 Wigmore, Evidence § 1725, pp. 79-80 (3d ed. 1940):
"The only limitations as to the use of such statements (assuming the fact of the design to be relevant) are ... the statements must be of a present existing state of mind, and must appear to have been made in a natural manner and not under circumstances of suspicion." (Emphasis in original.)
The above language was quoted and applied by the Court of Appeals in Maryland Paper Products Co. v. Judson, 215 Md. 577, 591, 139 A.2d 219 (1958) in an opinion by Chief Judge Brune who referred also to McCormick's treatise:
"McCormick on Evidence, Sec. 270, page 572, makes a similar statement: `* * * [T]he modern cases and texts leave no room to doubt the statement that the accepted principle today is that evidence of declarations of a plan, design or intention presently entertained by the declarant is, subject to the usual limitations as to remoteness in time and apparent sincerity common to all declarations of mental state, admissible when *194 offered as evidence that the design was carried out by acts or omissions of the declarant." (Emphasis added.)
The Court thereafter stated, at 591: "We approve the rule stated by Wigmore and McCormick." (Italics supplied.)
In discussing statements of intent in domicile cases Professor Wigmore observes that the criterion for admissibility is that "the declaration must appear to have been made under circumstances of naturalness without apparent motive to deceive...." 6 Wigmore, Evidence § 1727 (3d ed. 1940).
Appellee argues that Cluster v. Cole, 21 Md. App. 242, 319 A.2d 320 (1970), supra, n. 10, precludes the admission into evidence of these writings. That case is inapposite because it was concerned with the excited utterances of an unavailable witness to an automobile accident rather than with a statement concerning the intent of the declarant.
We hold that the communications to Mrs. Bartell and to Dr. Biars should have been received.

V

Disposition.
We find reversible error in the exclusion by the Chancellor of appellant's deposition and the proffered communications. The decree must be vacated and a further evidentiary hearing held on appellant's motion raising the jurisdictional question. With respect to such further proceedings, we observe that because the Chancellor had ruled on September 30, 1974 that appellant's deposition could not be used at the evidentiary hearing on December 2, 1974, appellee reasonably elected not to be represented at the taking of the deposition on November 19, 1974; and the court also denied appellee's motion for a protective order. We therefore rule that the deposition taken in Canada on November 19, 1974, if offered by appellant, may not be used at the further *195 evidentiary hearing except upon the consent of appellee. Appellant may, at all events, be deposed again.
Decree reversed; cause remanded for further proceedings not inconsistent with this opinion; costs to be paid by appellant.
NOTES
[1] As noted, infra, this letter as well as a communication from Dr. Bartell to his associate in dentistry, Dr. Biars, was ruled inadmissible.
[2] See Dackman v. Dackman, 252 Md. 331, 250 A.2d 60 (1969). By this action of the court, Dr. Bartell's attorney, his associate Dr. Biars, The Equitable Trust Company and Howard Rodman, executory vendor of certain real property in Baltimore County, were made parties defendant and were enjoined from removing or otherwise attempting to dispose of any of Dr. Bartell's property from the State of Maryland.
[3] With respect to the allegation of adultery, the Master's Report stated: "There is strong indication that the young [age 26] secretary or technician of this dentist went with him and is now residing in the same community but the testimony is somewhat short of proving adultery."
[4] The court relied upon Code, Art. 16, Sec. 4 concerning the liability of the property for the payment of the awards of alimony and support. That section applies to "any decree for divorce." Where, as here, no divorce was granted, reliance should be placed on the "inherent right and power of a court of equity." Dackman v. Dackman, supra, n. 2, 252 Md. p. 346.
[5] See, McCormick, Evidence, §§ 336, 337 and 342 (2d ed. 1972).
[6] For a thoroughgoing discussion of the federal rule, see 8 Wright & Miller, Federal Practice & Procedure, § 2147 (1970) and 4A Moore's Federal Practice ¶ 32.05 Both treatises cite Weiss v. Weiner with approval.
[7] Chief Judge Clark placed significant reliance on the admiralty case of Hyam v. American Export Lines, 213 F.2d 221 (2nd Cir.1954), where Judge [later Mr. Justice] Harlan stated, at 223: "The federal courts are open to foreign suitors as to others, and procedural rules are not to be construed in such fashion as to impose conditions on litigants which in their practical effect amount to a denial of jurisdiction."
[8] In addition to the cases previously discussed in this opinion, the King Court reviewed Vevelstad v. Flynn, 230 F.2d 695 (9th Cir.1956) cited in appellee's brief, which held that the deposition of a party who wilfully absented himself from the United States at the time of a trial was properly excluded; and, Stewart v. Meyers, 353 F.2d 691 (1965) leaving it to the trial court's discretion to admit a defendant's deposition whose absence had not been prohibitively procured.
[9] In excluding these communications at the evidentiary hearing, the court also stated "they are not of that spontaneous a nature."
[10] See, Cluster v. Code, 21 Md. App. 242, n. 1, at 246, 319 A.2d 320 (1974).