In re ESTATE OF Elise
P. DERRICOTTE.

Gilbert Phillips, et al., Appellants,

v.

Ida Brown Bryant, et al., Appellees.

Nos. 95–PR–1008, 96–PR–68, 96–PR–
170, 97–PR–94, 97–PR–239, 97–
PR–433 and 97–PR–1437.

District of Columbia Court of Appeals.

Argued Nov. 18, 1999.
Decided Jan. 27, 2000.

536

A. Palmer Ifill, Washington, DC, for appellants.

Peter Isakov, with whom Mabel Dole Haden, Washington, DC, was on the brief, for appellant Mabel D. Haden.

Tanja H. Castro, Washington, DC, for appellee Ida Brown Bryant.

J. Joseph Curran, Jr., Attorney General of Maryland, and Jeffrey H. Myers, Assistant Attorney General, filed a brief on behalf of appellee Ida Brown Bryant.

Darrel S. Parker, pro se, for appellee Darrel S. Parker, the successor personal representative.

Before FARRELL, GLICKMAN, and WASHINGTON, Associate Judges.

FARRELL, Associate Judge:

These consolidated appeals arise from the administration and distribution of the estate of Elise Derricotte, who died intestate. Appellants Gilbert and Preston Phillips ("appellants" or "the Phillips brothers") are Ms. Derricotte's first cousins once removed. They challenge the finding of the trial court, after a bench trial, that Ms. Derricotte was domiciled in the District of Columbia rather than Maryland at the time of her death. They further contest the evidentiary basis (actually only a portion of it) for the trial court's finding that Ida Brown Bryant was the first cousin of Ms. Derricotte and thus the rightful heir to her estate under District of Columbia law; and they contend in any event that Ms. Bryant's heirship claim was barred by the statute of limitations. Finally, they challenge other rulings by the trial court including its decision to termi- nate their appointment as the personal representatives of the estate. Attorney Mabel D. Haden, who filed suit on behalf of certain creditors during the administration of the estate, contests the refusal of the trial court to award her attorneys' fees out of the "common fund" she claims to have obtained on behalf of the estate. We reject all of these contentions and affirm the judgment and orders of the Superior Court.

## I. *Background*

Elise Derricotte died on December 8, 1992, at the age of 94, leaving no will. Within two months the Phillips brothers, who were the sons of her first cousin, petitioned for probate in the Superior Court of the District of Columbia asking to be made the personal representatives of Ms. Derricotte's estate and claiming to be her only surviving heirs. The petition was granted, and letters of administration were granted to the Phillips brothers, who then filed Waivers of Filing Inventory and Accounts and distributed $526,534 of the estate's personal property to themselves. In August of 1993, three of Ms. Derricotte's creditors moved to set aside the distribution of the estate, claiming entitlement to payment for services they had previously rendered to the decedent. They also sought removal of the Phillips brothers as personal representatives, asserting that the brothers were not the rightful heirs because Ms. Derricotte had a first cousin, Ida Bryant, who was still alive. The court dismissed the creditors' suit insofar as it sought removal and a finding of true heirship, concluding that they lacked standing to bring these claims. A copy of their complaint, however, had been sent to Ida Brown Bryant, who thereby learned of the probate matter for the first time.

The Phillips brothers' probate petition did not mention Ms. Bryant as a possible heir even though (as evidence later proved) they had grown up believing her to be their aunt and Ms. Derricotte's first cousin. Ida Brown Bryant is a mentally

incompetent elderly woman who is a ward of the state of Maryland residing at Crownsville Hospital Center—a fact known to appellant Gilbert Phillips since it was he who admitted her to the hospital. After learning of the probate proceeding from the creditors' complaint, Ms. Bryant's guardian at the Maryland Department of Aging filed an amended answer and cross-claim seeking removal of the Phillips brothers as personal representatives and a declaration that Ida Brown Bryant was the rightful heir to the Derricotte estate. The Phillips brothers moved to dismiss on the ground that the cross-claim was barred by the statute of limitations. The Superior Court directed their removal as personal representatives and appointed a replacement. The court then conducted successive bench trials on (a) whether Ms. Derricotte had been a District of Columbia domiciliary at the time of her death rather than (as the Phillips brothers maintained) a domiciliary of Maryland,[1] and (b) whether Ms. Bryant was Ms. Derricotte's first cousin. The trial court found that Ms. Derricotte had been domiciled in the District at the time of her death, and that Ms. Brown was the only surviving first cousin and thus the sole heir of the decedent.

## II. *Discussion*

### A. *Domicile*

■ Although their petition for probate asserted that Ms. Derricotte was a domiciliary of the District of Columbia, the Phillips brothers contend that they later determined this to be error and that the trial court likewise erred in finding that she was domiciled in the District at the time of her death. In part their argument is that the trial court wrongly shifted the burden of proof to them to prove domicile despite Ms. Derricotte's admitted residence in Maryland at the time of death, since "[t]he place where a [person] lives is properly taken to be [her] domicile until facts adduced establish the contrary." *District of Columbia v. Murphy,* 314 U.S. 441, 455, 62 S.Ct. 303, 86 L.Ed. 329 (1941) (quoted in *Andrews v. District of Columbia,* 443 A.2d 566, 569 (D.C.1982)). We hold that the court properly assigned the burden of proof and that the record fairly supports its mixed legal-factual conclusion that Ms. Derricotte was domiciled in the District of Columbia. *See* D.C.Code § 17–305(a)(1997); *Pace v. District of Columbia,* 77 U.S.App.D.C. 332, 336, 135 F.2d 249, 253 (1943) ("A domiciliary determination involves a compound consideration of fact and law.").

■ It is undisputed that Ms. Derricotte was a domiciliary of the District until 1988, having lived there for many years. Domicile, once established, is presumed to continue until it is shown to have been changed. *Dixon v. Dixon,* 190 A.2d 652, 654 (D.C.1963). "The two requisites for establishing a change of domicile are '(1) physical presence, and (2) an intent to abandon the former domicile and remain [in the new one] for an indefinite period of time.'" *District of Columbia v. Woods,* 465 A.2d 385, 387 (D.C.1983) (quoting *Heater v. Heater,* 155 A.2d 523, 524 (D.C. 1959)). The Phillips brothers contend that they met their burden under this standard by showing that Ms. Derricotte sold her house in the District in 1988 and took up residence in Maryland where she remained until her death in 1992. But physical presence, even for an extended length of time, does not defeat the presumption of continuing domicile unless an intent "to abandon a former domicile" in favor of a new one is also proven. *Id.* The burden of proving both elements—presence *and* intent to establish a new place of abode—is "on the party who claims that a change of domicile has taken place." *Bartell v. Bartell,* 28 Md.App. 180, 344 A.2d 139, 143 (1975); *see Andrews,* 443 A.2d at 569.

---

1. Under Maryland law it appears that the appellants would inherit something from the estate even if Ms. Bryant were declared to be the principal heir.

The trial court found that, although Ms. Derricotte moved to Maryland and lived there continuously until her death, the evidence failed to establish her intent to relinquish the domicile she had long enjoyed in the District of Columbia. Because her house on Allison Street in the District was too big and had too many steps for her to climb at her age, she sold it and moved to the Charter House, a single story apartment building in Silver Spring, Maryland, not far outside the District. Before moving in she signed only a two year lease. Two long-time friends testified that she was never happy at the Charter House, repeatedly expressed her desire to return to the District, and frequently went house-hunting with them looking only at houses in the District.[2] In April 1989, only seven months after her move to Maryland, Ms. Derricotte bought a house in the District and arranged for one of her nieces to move in with her there to assist her. The arrangement fell through before Ms. Derricotte could move and she sold the house in August 1989, but she gave a portion of the proceeds to a close friend (and licensed real estate broker) to hold as a deposit on another house she expected to buy in the District. Thereafter, she continued to go on weekly outings to find a house, again only in the District of Columbia. Throughout her residence in Maryland she commuted to the District to do her banking and attend church.

On these facts the Phillips brothers describe Ms. Derricotte's state of mind as a mere "floating intention to return to the District at some future time," quoting *Adams v. Adams,* 136 A.2d 866, 867 (D.C. 1957) (citation omitted). The trial court could fairly conclude, however, that her years-long and continuing association with the District, her dissatisfaction with the Charter House, and especially her actions in purchasing a new residence in the District and taking steps to buy yet another

one with the intent to relocate there, all belied this characterization. We find no reason to set aside the court's determination of domicile.

## B. *Heirship*

The parties agree that if Ida Brown Bryant was Elise Derricotte's first cousin, she was the sole rightful heir to her estate under District law. The trial court, after receiving testimony and documentary evidence, found that she was. Largely without citing legal authority, the Phillips brothers raise evidentiary objections to some but not all of the proof that Ida Brown Bryant was the same person as Elfrida Brown, born to Joseph and Elizabeth Walker Brown in March of 1907,[3] and therefore the sole surviving first cousin of Ms. Derricotte. None of these objections has merit, and the court's factual finding as to Ms. Bryant's identity is amply—even overwhelmingly—supported by the record.

 First, a 1975 newspaper obituary for the Phillips brothers' mother, Elizabeth Brown Phillips, written by family members and listing Ida E. Bryant as Elizabeth Phillips' sister, was properly admitted under the "pedigree exception" to the hearsay rule, *see Hill v. White,* 589 A.2d 918, 923 (D.C.1991), and likely under the ancient documents rule as well. *See* 5 Wigmore, Evidence § 1573(a) (Chadbourn rev.1974); Fed.R.Evid. 803(16). Testimony by nieces and nephews of the Phillips brothers about their understanding of Ida Bryant's relation to them was likewise admissible under the pedigree exception. Second, a 1942 social security application in which a person claiming to be Ida Brown Davis asserted that she was born to Joseph I. Brown and Elizabeth M. Walker on March 23, 1907, and a 1968 application by Ida Elfrida Bryant for a replacement social security card using the same social security number as the 1942 application,

---

2. According to witness Madelyn Phillips (no relation to the appellants), Ms. Derricotte was crazy about the District and would state: "I'm a Washingtonian."

3. Elise Derricotte's mother, Margaret (nee) Walker, was the sister of Elizabeth Walker.

were both admissible under the business records exception to the hearsay rule. *See* Super. Ct. Civ. R. 43–I; *In re D.M.C.*, 503 A.2d 1280, 1282–83 (D.C.1986).[4] Third, the Phillips brothers offer no supporting argument or case law for their claim of unfair surprise in the admission, in Ms. Bryant's rebuttal case, of census records from 1910 and 1920 reporting that Joseph and Elizabeth Brown had children including Ida, whose listed age was consistent with a 1907 birth date. *See Adkins v. Morton*, 494 A.2d 652, 661 (D.C.1985) (scope of rebuttal evidence left to trial court's discretion).[5] Fourth, and in any event, "in nonjury cases the reception of inadmissible evidence does not itself constitute reversible error where there is other evidence to support the judge's findings." *Bethesda Salvage Co. v. Fireman's Fund Insurance Co.*, 111 A.2d 472, 474 (D.C.1955). Even if all of appellants' evidentiary objections were well taken, we would perceive no basis on this record for disturbing the trial court's finding of Ms. Bryant's heirship.

### C. *Statute of Limitations*

 ▬ The Phillips brothers contend that Ms. Bryant's claim of heirship is barred by the statute of limitations because, although her guardian first received notice of the probate proceeding on August 30, 1993, it did not file an amended answer and cross-claim until March 9, 1994. According to appellants, the correct limitations period for Ms. Bryant's claim was six months under D.C.Code § 20–903(a)(2), which provides in relevant part: "[A]ll claims against the estate based on the conduct of or a contract with a personal representative shall be barred unless an action is

**4.** A letter from the Social Security Administration stated that the applications were true and complete copies of the documents, which the SSA accepts and maintains in the regular course of its business.

**5.** A family tree admitted in evidence was no more than a graphical representation of Ida Brown Bryant's case, and was admissible as such.

commenced against the estate within 6 months of the date the claim arose."

We are not persuaded that Ms. Bryant was bound by the limitations period of § 20–903(a)(2). That section relates to "claims against the estate" and, read most naturally, establishes a six month period for *creditors* to file claims against an estate, as distinct from heirs, especially when read *in pari materia* with § 20–903(a)(1) (barring claims not presented within six months "against the estate, the personal representative, *and the heirs and legatees*") (emphasis added). *See also* Council of the District of Columbia, Committee on the Judiciary, Report on Bill 3–91, "The District of Columbia Probate Reform Act of 1980" (March 12, 1980), at 67 ("[N]ew section [20–903] is grounded on the policy that assertion of *claims against heirs and legatees* after distribution is onerous," so that "a determinable cut off point" for such claims is required (emphasis added)). As against the estate, Ms. Bryant's claim was not based on the conduct of the personal representative; it was based on her status as an heir.[6] Moreover, her cross-claim sued the Phillips brothers for their own conduct, and it therefore brought another statute of limitations into play. Her cross-claim requested an accounting, revocation of the letters of administration issued to the brothers, and an order both barring further transactions by them and requiring return of all money and property they had distributed. It thus had the earmarks of a "claim of personal liability against [the] personal representative" for which D.C.Code § 20–1303(a) provides a general one-year statute of limitations.[7] This court has stated:

**6.** The Phillips brothers cite no other statute besides § 20–903(a) as purportedly barring Ms. Bryant's cross-claim on account of time.

**7.** Section 20–1303(a) states, in relevant part:

Unless otherwise barred, any claim of personal liability against a personal representative, except for fraud, and except as provided in section 20–736 [not applicable here], shall be barred one year from the

[W]here two constructions as to the limitations period are possible, the courts prefer the one which gives the longer period in which to prosecute the action . . . . If there is any reasonable doubt in a statute of limitations problem, the [c]ourt will resolve the question in favor of the complaint standing and against the challenge.

*Owens–Corning Fiberglas Corp. v. Henkel,* 689 A.2d 1224, 1233 (D.C.1997) (quoting *Simpson v. District of Columbia Office of Human Rights,* 597 A.2d 392, 402 (D.C. 1991)). Applying this rule, we hold that Ms. Bryant's cross-claim was timely filed under § 20–1303(a).

### D. *Jury Trial*

The trial court denied the Phillips brothers' request for a jury trial on the issues of domicile and heirship. Primarily citing D.C.Code § 16–3106, appellants contend that this was error.[8] We need not decide whether either that tersely written statute or the Seventh Amendment afforded appellants the right to a jury trial on the issue of heirship,[9] because their failure to make timely demand waived any right they had to a jury trial.

Under Rule 38 of the Superior Court Rules of Civil Procedure, the right to a jury trial is waived unless a party serves and files a written demand after commencement of the action and "not later than 10 days after the service of the last pleading directed to [the] issue" triable of right by a jury. Super. Ct. Civ. R. 38(b); *see id.* at (d).[10] If the only pleadings in the

case are the complaint and the answer, "the demand for jury trial must be served not later than ten days after service of the answer"; and if there are amended or supplemental pleadings, "a late demand [still] does not create a right to jury trial on issues . . . raised fairly by the original pleadings." 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2320, at 148, 154–56 (1995).

Ida Bryant's amended answer and cross-claim raising the heirship issue was filed on March 9, 1994. The Phillips brothers did not answer the cross-claim or make a jury demand until December 6, 1994, nine months later. Instead they filed a Motion to Strike the cross-claim in March 1994 and, when the court denied that motion on September 15, a Motion for Reconsideration on September 20. They contend that these motions extended the time for filing their answer and jury demand. We are unpersuaded. "[S]ervice of a motion permitted under [Super. Ct. Civ. R. 12]," it is true, extends the time for filing an answer until ten days after the motion is denied. *See* Rule 12(a)(4)(A). And, with some generosity, appellants' Motion to Strike may be said to have raised defenses under Rule 12. But Rule 12 makes no allowance for a motion to reconsider—such a motion is not one "permitted under this rule." *Id.* The Phillips brothers therefore had ten days after the denial of the Motion to Strike in which to answer the cross-claim, and ten days thereafter to demand a jury trial. They did neither,

---

date of distribution of all the assets and satisfaction of all known claims against the estate.

8. D.C.Code § 16–3106 provides, in relevant part: "In a plenary proceeding provided for by section 16–3105, the Probate Court shall give judgment, or decree upon the bill and answer, or upon bill, answer, depositions, *or finding of the jury* " (emphasis added).

9. Appellants' claim that Ida Brown Bryant was a Maryland domiciliary challenged the Superior Court's jurisdiction to adjudicate the heirship and related issues. In general, factu-

al issues relating to jurisdiction are tried by the court preliminary to the trial on the merits, *Leichtman v. Koons,* 527 A.2d 745, 748 (D.C.1987), and appellants have given us no reason to depart from that rule in this case.

10. The Superior Court Rules of Civil Procedure apply to proceedings in the Probate Division except where inconsistent with specific probate rules "or the traditionally uncontested and administrative proceedings therein." Super. Ct. Prob. R. 1(f). Assuming a jury trial right was even available to the Phillips brothers, Rule 38 governed that right.

and thus forfeited any arguable right they had to a jury trial.[11]

### E. Attorneys' Fees

■ In August 1993, attorney Mabel D. Haden brought suit on behalf of three persons claiming to have managed Elise Derricotte's finances and property and cared for her well-being over a period of twenty-five years. These creditors sought payment from the estate for services rendered, and also demanded removal of the Phillips brothers as personal representatives since, contrary to their assertions to the court, the heir to the estate was Ida Bryant and not the brothers. The trial court dismissed the suit insofar as it sought removal, because at the time of the suit the statute did not include creditors in the definition of "interested persons" authorized to petition for removal of a personal representative.[12] Ultimately the creditors settled with the estate on their claim for services rendered.

Ms. Haden appeals from the trial court's denial of her request for attorneys' fees from the estate, contending that her actions on behalf of the creditors resulted in the creation of a "common fund" benefitting both Ida Brown Bryant and the creditors. The trial court denied the request on the ground that the common fund doctrine applies only to class actions, a proposition we have rejected. See Passtou, Inc. v. Spring Valley Ctr., 501 A.2d 8, 12 n. 10 (D.C.1985). We nonetheless are not persuaded that this case calls for application of the common fund doctrine.

■ That doctrine "permits an award of attorneys' fees to a person who preserves or recovers a fund or property for the benefit of others." Id. at 11–12. "In effect, the doctrine operates to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the 'stranger' beneficiaries do not receive these benefits at no cost to themselves." Id. at 12 (citation omitted; internal quotation marks partly omitted). Of course, to the extent that the Derricotte estate settled with the creditors represented by Ms. Haden, it would not be accurate to say that either the creditors or, presumably, their retained attorney "bore alone" the costs of recovering the money distributed by the Phillips brothers. Furthermore, Haden's role in wresting control of the estate from the Phillips brothers and establishing Ida Bryant's rightful heirship was extremely limited. The creditors' suit alerted the court to Ida Bryant's existence and gave notice to Bryant's guardian of the existence of the Derricotte estate and her potential claim. Thereafter, however, Haden played no role at all in litigating the issues of heirship and domicile at the core of determining Ida Bryant's entitlement to the estate.[13] The common fund doctrine,

---

11. The Phillips brothers make several additional arguments that can be treated briefly. First, on application of the guardian ad litem appointed to represent Ida Bryant, the trial court had ample reason to remove the brothers as personal representatives, see D.C.Code § 20–526(a); nor were they denied a hearing on that issue. Second, since the trial court correctly determined that the Derricotte estate belonged to Ida Brown Bryant, the Phillips brothers have no standing to challenge fees paid out of the estate to the guardian ad litem and successor personal representative, or the decision of the successor personal representative to hire counsel from estate funds to bring a claim against a contractor working on the estate. Finally, since Ida Brown Bryant was determined to be the rightful heir, the trial court properly granted the successor personal representative's request that the Phillips brothers be made to return the money they had distributed to themselves to the estate. See D.C.Code § 20–1104(a). The claims of res judicata and statute of limitations which the Phillips brothers raised in opposition to the disgorgement order are patently without merit.

12. The statute has since been amended in that regard. See, e.g., In re Estate of Wilson, 743 A.2d 719 (D.C.2000).

13. Although Haden was present throughout the proceedings until the settlement of her clients' claim, the trial court made clear her role essentially of bystander when it refused to let her question a witness, telling her: "[W]in, lose, or draw, whether [Ms. Bryant's]

an exception to the deep-rooted principle that parties bear their own costs of litigation, *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 271, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), is designed to "recaptur[e] unjust enrichment." *Passtou,* 501 A.2d at 12 (quoting Dawson, *Lawyers and Involuntary Clients: Attorneys Fees from Funds,* 87 HARV. L. REV. 1597 (1974)). Haden was not instrumental enough in establishing ownership of the

side wins or ... [the Phillips brothers'] side wins[,] that does not in any way affect your

Derricotte estate to thus require the intervention of equity.

*Affirmed.*