VERGIE M. LAPELOSA, Ind. etc. *v.* KENNETH CRUZE

[No. 239, September Term, 1979.]

*Decided November 13, 1979.*

The cause was argued before GILBERT, C. J., and COUCH and MACDANIEL, JJ.

*John J. Sellinger,* with whom was *George W. Shadoan* on the brief, for appellant.

*William A. Ehrmantraut,* with whom were *Donahue, Ehrmantraut & Montedonico* on the brief, for appellee.

MACDANIEL, J., delivered the opinion of the Court.

On April 20, 1977, Richard D. Lapelosa and Vergie Marie Lapelosa, his wife, filed an action in the Circuit Court for Prince George's County (Judge Audrey E. Melbourne, presiding) against Dr. Kenneth Cruze, alleging medical negligence in the care and treatment of Richard Lapelosa. Specifically, they alleged in the various counts: (1) negligence in Dr. Cruze's failure to perform surgery on Mr. Lapelosa prior to April 20, 1974, when Mr. Lapelosa suffered a cerebral stroke; (2) negligence in the performance of the May 9, 1974, surgery without first obtaining a recent diagnostic dye study and without obtaining informed consent to the surgery; and (3) damages for loss of consortium.

Interrogatories were propounded by Richard Lapelosa to Dr. Cruze and also by Dr. Cruze to Richard Lapelosa. They were answered by the respective parties. A deposition was also taken of Dr. Cruze.

On June 18, 1978, prior to trial, Richard Lapelosa died of a heart attack. There is no claim that his death was related to the treatment rendered by the appellee, and, therefore, no

issue of wrongful death is involved in this case. Thereafter, Vergie Lapelosa, in her capacity as personal representative of her husband's estate, was substituted for Richard Lapelosa in this action.

Prior to the trial, the appellants filed a Motion *in Limine,* asking the court to sign an order excluding from the evidence at the trial any testimony by the appellee concerning: (1) any statement by the deceased in which he allegedly refused, or indicated an unwillingness, to undergo surgery; and (2) any statement by the deceased in which he allegedly refused, or indicated an unwillingness, to submit to a diagnostic dye study prior to surgery on May 9, 1974. The appellants argued that the appellee was barred from so testifying by the Maryland "Dead Man's" Statute.[1] The trial judge denied the motion in a Memorandum and Order dated October 2, 1978. She reasoned that the use of discovery against Dr. Cruze by the deceased constituted a waiver under the statute with respect to the controversial testimony.

When the trial began, the appellants called Dr. Cruze as an adverse witness, and, in response to their questioning, Dr. Cruze testified that Mr. Lapelosa had refused surgery from June 1973 to April 1974. He also testified that, after surgery finally had been scheduled, Mr. Lapelosa still chose not to undergo another diagnostic dye study prior to surgery. At no time during the trial did the appellants renew their motion to

---

[1] Section 9-116 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland provides:

"*§ 9-116.  Dead man's statute.*

A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement. (An. Code 1957, art. 35, § 3; 1973, 1st Sp. Sess., ch. 2, § 1; 1976, ch. 269.)"

have the above evidence excluded, nor did they record an objection to the prior ruling on the motion *in limine.*

When Mrs. Lapelosa took the witness stand, she was asked by her attorney, "In your discussion with your husband, did he express any emotion or feeling concerning the office visit?" The question referred to alleged recommendations by Dr. Cruze concerning surgery. The appellee objected on the grounds that the answer would be hearsay. The appellants' attorney then proffered that the testimony would be as follows:

> "MR. SHADOAN: Mr. Sellinger is more familiar with it than I, but it is my understanding that Mr. Lapelosa indeed, as Dr. Cruze's notes indicate, did feel his nerves were working on him. He was concerned. He was concerned because he could not go back to work until the surgery was undertaken, and he wanted to go back to work. And he was quite concerned about this. He was upset that he was not able to return to work until the surgery took place. He was sitting around the house waiting for the opportunity for the surgery to take place, concerned that he could not return to work until it was done. That is my understanding of the substance of what the testimony would be.
>
> Is that accurate?
>
> MR. SELLINGER: That is certainly correct on that point."

The attorney argued that such testimony fell under the "state of mind" exception to the hearsay rule. The trial judge disagreed and sustained the objection. She made it clear that her ruling was based solely on the unreliability of the testimony under the hearsay rule and not on the "Dead Man's" Statute, which, she felt, had been waived.

At the conclusion of all of the evidence the trial judge gave the following general instruction on contributory negligence:

> "To establish the defense of contributory negligence, the burden is on the defendant to prove

by a preponderance of the evidence that the plaintiff was negligent and that such negligence contributed in some degree as a proximate cause of the injuries to the plaintiff. . . .

Contributory negligence is negligence on the part of the person injured, which, combining in some degree with the negligence of another proximately causes the injury of which he complains. If you find that the plaintiff was guilty of such negligence, you should find for the defendant, because one who is guilty of contributory negligence may not recover from another for the injuries sustained, even though the negligence of that other was also a cause of the injury."

The jury returned a verdict in favor of the appellee, and the trial judge denied the appellants' Motion for a New Trial. On appeal, Mrs. Lapelosa alleges a number of errors in the conduct of the trial below.

## I

The appellants argue, first, that their pre-trial deposition of, and interrogatories to, Dr. Cruze did not constitute a waiver of their right, under the "Dead Man's" Statute, to have excluded from the trial the controversial testimony by Dr. Cruze concerning statements of Mr. Lapelosa. They contend that the trial judge should not have admitted that testimony into evidence. We find, however, that we need not reach this issue because it was not properly preserved for appellate review.

The appellants initially raised the issue of the admissibility of Dr. Cruze's testimony in a pre-trial Motion *in Limine,* which was denied. At trial, they did not voice any objection to such testimony by Dr. Cruze, and, in fact, their counsel called Dr. Cruze to testify and asked him questions regarding statements made by the deceased.

Maryland Rule 1085 requires that, normally, on appeal, we not decide "any point or question which does not plainly

appear by the record to have been tried and decided by the lower court ..." Thus, for a question of admissibility of evidence to be preserved for appellate review, the testimony must generally have been objected to in the court below. *See Davidson v. State,* 18 Md. App. 61, 72 (1973); *Ragler v. State,* 18 Md. App. 671, 673 (1973).

There is no exception to the above rule, which requires the recording of an objection in the trial below, where the question of admissibility of evidence has previously been raised in a pre-trial motion *in limine.*

In *Ory v. Libersky,* 40 Md. App. 151, 164 (1978), Judge Moore, speaking for this Court, stated:

> " ... there is substantial authority for the proposition that the denial of a motion *in limine* cannot in and of itself constitute reversible error."

He, therefore, held that denial of the appellant's motions *in limine* was not reversible error. The reason for this rule was made clear in *Robinson v. State,* 309 N.E.2d 833, footnote 17 (1974), when the Court of Appeals of Indiana, Second District, defined and explained motions *in limine* as follows:

> "17. 'Literally, "in limine" means "on the threshold; at the outset." Ballentine, Ballentine's Law Dictionary 628 (1969). See also 2 Burrill, Law Dictionary 55 (1871) and Callaghan, Cylopedic Law Dictionary 557 (1940). A "motion in limine" is a term used to describe a written motion which is usually made before or after the beginning of a jury trial for a protective order against prejudicial questions and statements. Its purpose has been succinctly expressed in Bridges v. City of Richardson (1962), 163 Tex. 292, 354 S.W.2d 366, 367:
>
> > "The purpose in filing a motion in limine to suppress evidence or to instruct opposing counsel not to offer it is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters which have no proper bearing on the issues in the case or on

the rights of the parties to the suit. *It is the prejudicial effect of the questions asked or statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself,* which a motion in limine is intended to reach ...." ' Burrus v. Silhavy (1973), Ind.App., 293 N.E.2d 794, 796, 35 Ind.Dec. 541, 544." (Emphasis added.)

In *Reading v. Ferguson,* 501 S.W.2d 717, 722-23 (1973), the Court of Civil Appeals of Texas elaborated further:

"[a motion *in limine*] also serves the useful purpose or raising ,and pointing out ·before trial, certain evidentiary rulings that the Court may be called upon to make. By its very nature, when properly drawn, its grant cannot be error. *It is not a ruling on evidence. It adds a procedural step prior to the offer of evidence.*

... In *Hudson v. Smith,* 391 S.W.2d 441 (Houston, Tex.Civ.App., 1965, ref., n. r. e.) at page 449 the court said: 'Granting or denying a motion in limine does not preserve error.' So also in Gulf States Abrasive Manufacturing, Inc. v. Oertel, 489 S.W.2d 184 (Houston, Tex.Civ.App., 1st Dist., 1972, ref., n. r. e.) at page 187, which states: 'Error is not preserved by the mere showing of the granting or denying of a motion in limine.' See also State v. Wheeler, 390 S.W.2d 339 (Beaumont, Tex.Civ.App., 1965, ref., n. r. e.) and Aetna Casualty and Surety Company v. Finney, 346 S.W.2d 917 (Texarkana, Tex.Civ.App., 1961, ref., n. r. e.)."

Thus, in *Biard Oil Co. v. St. Louis Southwestern Railway Co.,* 522 S.W.2d 588, 590 (1975), the Court of Civil Appeals of Texas said:

"[1-3] It is never error for a trial court to overrule a motion in limine which seeks to preclude the introduction of evidence. The party opposing the admission of certain evidence still has the burden of

interposing a specific objection at the time the evidence is tendered and appeal from its admission over his objection." (Citations omitted.)

We hold, therefore, that the appellants, by their failure to record a specific objection and by their questioning of Dr. Cruze at trial, waived the issue of the admissibility of the doctor's testimony concerning controversial statements by the deceased.

## II

Next, the appellants cite as error the trial judge's refusal to allow Mrs. Lapelosa to testify concerning statements allegedly made to her by Mr. Lapelosa regarding his feelings about the prospective surgery. With respect to the appellants' argument that the controversial statements fell under the "state of mind" exception to the hearsay rule, the judge said:

" . . . it appears to the Court that these statements are not being offered to prove state of mind. The state of mind of Mr. Lapelosa is not an issue in this case. They are being offered, however, to prove the negligence of the defendant."

The judge felt, in addition, that the proffered statements were unreliable. She said:

" . . . it is very easy to perceive that Mr. Lapelosa could very well have been told by the doctor to have surgery, and he could very well have told his wife that he was anxious to have surgery and these additional tests; but that he in fact did not want to go through with them. This was a way that he could prevent his wife from further bugging him or harassing him about the subject."

We agree with the trial judge's ruling that the proffered testimony did not fall under the "state of mind" exception to the hearsay rule.

Statements of a declarant's state of mind, or emotion, are admissible only if they were originally made under

circumstances of apparent sincerity. *See Md. Paper Products Co. v. Judson,* 215 Md. 577, 590 (1958); *McCormick on Evidence,* § 294. As the trial judge correctly pointed out, the circumstances of any statements by the decedent concerning his feelings about surgery do not necessarily assure reliability of those statements. Therefore, we hold that the trial judge correctly excluded the proffered controversial testimony of Mrs. Lapelosa.

## III

The appellants also argue that they were entitled to a directed verdict on the issue of informed consent. They contend that Mr. Lapelosa would not have declined to undergo another diagnostic dye study had he been properly informed by Dr. Cruze concerning the benefits to be thereby obtained. In addition, they argue that had Mr. Lapelosa been informed of the increased risks of surgery without the guidance of a recent dye study, he would not have agreed to the May 9, 1974, surgery. We do not agree with the appellants' contention.

Regarding the doctrine of informed consent, the Court of Appeals said in *Sard v. Hardy,* 281 Md. 432, 439-40 (1977):

> "Simply stated, the doctrine of informed consent imposes on a physician, before he subjects his patient to medical treatment, the duty to explain the procedure to the patient and to warn him of any material risks or dangers inherent in or collateral to the therapy, so as to enable the patient to make an intelligent and informed choice about whether or not to undergo such treatment. *Salgo v. Leland Stanford Jr. Univ. Bd. of Trustees,* 154 Cal. App.2d 560, 317 P.2d 170, 181 (1957); *Bang v. Charles T. Miller Hospital,* 251 Minn. 427, 88 N.W.2d 186, 190 (1958); *Scaria v. St. Paul Fire & Marine Ins. Co.,* 68 Wis. 2d 1, 227 N.W.2d 647, 654 (1975)."

The Court adopted a standard of "reasonableness" in

determining how much must be disclosed by a doctor to his patient. The Court said:

> "We stress that a physician is not burdened with the duty of divulging *all* risks, but only those which are material to the intelligent decision of a reasonably prudent patient." 281 Md. at 444.

The Court also noted:

> "Finally, disclosure is not required where the risk is either known to the patient or is so obvious as to justify presumption of such knowledge, nor is the physician under a duty to discuss the relatively remote risks inherent in common procedures, when it is common knowledge that such risks inherent in the procedure are of very low incidence." 281 Md. at 445.

As the Court of Appeals also noted in *Sard v. Hardy, supra,* the doctrine of informed consent also requires proof of proximate causation. The Court said:

> "The rule is that a plaintiff cannot recover under the doctrine unless he can prove by a preponderance of the evidence that he would not have given his consent to the proposed procedure had full and adequate disclosure been made at the time consent was originally given. *Karp v. Cooley,* 493 F.2d 408, 422 (5th Cir.), *cert. denied,* 419 U.S. 845 (1974); *Aiken v. Clary,* 396 S.W.2d at 676; *Wilkinson v. Vesey,* 295 A.2d at 690." 281 Md. at 448-49.

This requirement, the Court added,

> " . . . is to be resolved by an objective test: whether a reasonable person in the patient's position would have withheld consent to the surgery or therapy had all material risks been disclosed." 281 Md. at 450.

With respect to a ruling on a motion for a directed verdict,

the Court of Appeals said in *Quality Disc. Tires v. Firestone Tire,* 282 Md. 7, 11 (1978):

> ". . . a court is required to 'assume the truth of all credible evidence in the case tending to sustain the contentions of the party against whom the verdict is directed as well as all inferences of fact reasonably and fairly deducible therefrom.' *Durante v. Braun,* 263 Md. 685, 689, 284 A.2d 241 (1971). These facts and inferences must be viewed in the light most favorable to the party against whom the directed verdict is sought, that is, all conflicts must be resolved in his favor, and if 'there is any legally relevant and competent evidence from which a rational mind can infer a fact at issue,' the motion for a directed verdict must be denied, *Yommer v. McKenzie,* 255 Md. 220, 228, 257 A.2d 138 (1969). *Accord, Beahm v. Shortall,* 279 Md. 321, 341-343, 368 A.2d 1005 (1977); *Levine v. Rendler,* 272 Md. 1, 12, 320 A.2d 258 (1974)."

Applying the above law to the facts of the present case, we hold that the appellants clearly were not entitled to a directed verdict on the issue of informed consent. First, Dr. Cruze testified as follows concerning Mr. Lapelosa's understanding of dye tests:

> "Q ... Is it your recollection now that you did explain the purpose of the dye study ...?
>
> A ... he knew what a dye study was, because we had done one, and I see no reason to explain to him the purpose, he knew what the purpose was when we did the first one. So, in that sense I didn't."

Later, Dr. Cruze added:

> "This patient had already had a previous dye study. He knew. He heard the story. He heard about the complications and the possibilities of what we hoped to find. So for me to sit down and explain

> everything at that point, when he said that he really
> didn't care to have one, would almost be redundant
> . . . ."

We hold that this is sufficient evidence from which the jury could have concluded that the attendant risks of a dye study or of surgery without a dye study were known to Mr. Lapelosa and that, therefore, Dr. Cruze was not under a present duty so to inform his patient.

In addition, Dr. Harvey Ammerman testified that a dye study "was not indicated during that interim" before surgery on Mr. Lapelosa. From this, the jury could reasonably have inferred that the appellants had not met their burden of showing a causal connection between the failure of Dr. Cruze to have another dye study and the injuries allegedly suffered as a result of the subsequent surgery.

Therefore, for the reasons given above, the trial judge correctly refused to grant the appellants a directed verdict on the issue of informed consent.

## IV

The appellants argue that, with respect to the issue of contributory negligence, either no jury instruction should have been given or a requested limited instruction should have been given instead of a general instruction. We disagree.

The appellants' claim that no instruction on contributory negligence should have been given to the jury is frivolous. Obviously, any delay with respect to surgery caused by Mr. Lapelosa may have played a role in causing the injuries complained of.

With regard to a limited contributory negligence instruction, the appellants said in the court below:

> "I would ask the Court to instruct the jury that there
> is no issue of contributory negligence with respect
> to any claim of negligence against the defendant
> because of his actions undertaken after 4-26-74,
> when the patient's consent was secured. And they
> should clearly understand that if there is any issue

> of contributory negligence in the case, it only relates
> to the claims of the patient against the doctor for the
> doctor's actions taken prior to April 26, 1974."

We hold that, while some form of a limited contributory negligence instruction might have been appropriate, the requested instruction was improper.

In their case, the appellants alleged negligence on the part of Dr. Cruze even after consent to surgery had been obtained. They point, at least in part, to his failure to obtain a recent diagnostic dye study which, they contend, would have made the surgery safer. As a defense to this allegation, the appellee testified, as indicated in Section III above, that the dye study was skipped at the insistence of Mr. Lapelosa. Since this testimony amounted to evidence of possible contributory negligence by Mr. Lapelosa with respect to the surgery itself, the appellants were not entitled to a jury instruction limiting contributory negligence to the time prior to his consent to surgery. Therefore, we hold that the trial judge did not err in refusing to grant the requested instruction.

## V

The appellants also contend that the trial judge abused her discretion in allowing the use of photographic slides as an aid to Dr. Cruze's testimony. This argument is completely without merit. A judge is given wide discretion in the conduct of a trial at which he presides. *See Gerstein v. State,* 10 Md. App. 322, *cert. denied,* 402 U.S. 1009 (1970), and the cases cited therein. In the present case we fail to see any abuse of this discretion.

## VI

Finally, the appellants argue that the trial judge's failure to instruct the jury to disregard two remarks made by counsel for the appellee in closing argument was reversible error. We disagree.

We note, first, that any complaint which the appellants may have about the first alleged improper remark was not

preserved for appellate review. With respect to that remark, the appellants registered an objection but they did not seek a mistrial or ask that the jury be instructed to disregard the remark, as required under Maryland Rule 1085. *See Feeney v. Dolan,* 35 Md. App. 538, 553 (1977), and the cases cited therein.

The second alleged improper remark by the appellee's counsel was as follows:

> "Dr. Cruze is a practitioner in a very skilled speciality, vascular surgery. There are not a lot of them around. He has brought to your community, in fact, brought back to your community — because he was born and raised in Takoma Park, Maryland — his skill and training that he learned 3,000 miles away in the University of California at Los Angeles. I beg of you to show your confidence in his integrity and in his ability by bringing in a verdict in his favor, as a vote of confidence and a vote of "Thank you, Dr. Cruze, for giving us your talents to take care of us."

The appellants argue that the trial judge's refusal to instruct the jury to disregard the remark was an abuse of her discretion. We disagree.

As the Court of Appeals said in *Wilhelm v. State,* 272 Md. 404, 413 (1974):

> "As a limitation upon the general scope of permissible closing argument this Court in *Esterline v. State,* 105 Md. 629, 66 A. 269 (1907), cautioned that counsel should not be permitted by the court, over proper objection, to state and comment upon facts not in evidence or to state what he could have proven. Persistence in such course of conduct may furnish good grounds for a new trial. The conduct of the trial must of necessity rest largely in the control and discretion of the presiding judge and an appellate court should in no case interfere with that judgment unless there has been an *abuse of discretion* by the

trial judge of a character likely to have injured the complaining party. 105 Md. at 637, 66 A.2d at 272."

In the present case, we do not feel that the statement complained of was likely to have misled or influenced the jury to the prejudice of the appellants. *See Wilhelm v. State, supra* at 415-17 and the cases cited therein. Therefore, we cannot say that the trial judge clearly abused her discretion in declining to make a cautionary instruction to the jury.

*Judgment affirmed.*
*Costs to be paid by appellant.*