494 A.2d 957

James Larry SAVOY

v.

STATE of Maryland.

No. 1540, Sept. Term, 1984.

Court of Special Appeals of Maryland.

July 10, 1985.

242

**244**

Bradford C. Peabody, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

David Yuan Li, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Stephen J. Braun, State's Atty., for Charles County and Leonard Collins, Asst. State's Atty. for Charles County, LaPlata, on brief), for appellee.

Submitted Before WEANT, GARRITY and ROBERT M. BELL, JJ.

GARRITY, Judge.

Appellant, James Larry Savoy, was convicted by a jury in the Circuit Court for Charles County of assault with intent to maim, assault with intent to prevent lawful apprehension, and assault and battery. He was sentenced to concurrent sentences totaling six years.

### Statement of Facts

While driving in their unmarked police car in the Waldorf area of Charles County at approximately 2:20 p.m. on May 1, 1984, two undercover officers of the Narcotics Vice Section of the Charles County Sheriff's Department, spotted appellant as he drove by. At trial, in response to the prosecution's question about what he had observed, Investigator Rex Coffey testified:

> ... At that time we saw the Defendant, Mr. Savoy, operating the vehicle. And at that time I advised Investigator Riley that Mr. Savoy, I knew his license was

suspended or revoked. *I ran his name through the computer the day before when I received information about drug activity.* (Emphasis added).

The defense counsel objected and made a motion to strike, which the trial court sustained.

The police officers had attempted to summon a marked police car to stop the appellant, but were unable to reach anyone on their portable radio. When the appellant stopped at a red light, the officers pulled up beside him and decided to make the arrest themselves. Officer Coffey approached the appellant's car, held his badge up to the open window of the driver's side, and said:

I am Investigator Coffey with the Sheriff's Department. Larry, you know me. Your license is revoked, so I want you to pull to the side of the road after I come around and get in the vehicle with you.

The appellant appeared to acquiesce in Officer Coffey's request. Officer Coffey further testified that, "[h]e knew who I was. I had several contacts with Mr. Savoy in the past year. He knew who I was." Officer Coffey started to walk around the front of the vehicle so that he could enter on the passenger side. However, when he reached the middle of the car, it suddenly accelerated. Although the vehicle made contact with Officer Coffey's legs, he managed to propel himself atop the hood and off to the side. As Savoy drove away, Investigator Riley fired a single shot at the car before getting back into his vehicle and chasing him. Officer Coffey started chasing on foot before an off-duty police officer offered Coffey a ride and rendered assistance. Although Savoy crossed into Prince George's County and eluded trailing police vehicles, he turned himself into the Charles County Sheriff's Department an hour and a half later. Savoy refused to answer any questions about the car, and it was never located.

On cross-examination of Officer Coffey, the defense pointed out that the officer could have simply "gone down and filed a charge against (the appellant) or written up a

citation and had that served on him later on." Officer Coffey responded:

Yes, sir, I could have done that, but I didn't want to do that.

(Defense counsel): You did not have to make a stop?

(Coffey): No. I was hoping that additional charges would come out of that motor vehicle stop.

On redirect examination, the following exchange took place:

BY MR. COLLINS: (Assistant State's Attorney)

Q. Officer, how much prior to May 1st, the date of this incident, how much prior to that was your previous contact with the Defendant. Was it nine years ago?

. . . . .

MR. COOPER: (Defense Counsel) Objection.

THE COURT: Overruled.

A. It was around 9-20-83 . . . I spent around six to eight hours in and out of the Defendant's eye contact, conversations with him through some processes at the Sheriff's Department.

. . . . .

Q. Now, with regard to defense counsel asked you why you didn't just file charges with the Commissioner, could you please explain why you elected to stop the Defendant and what you intended to do?

MR. COOPER: Objection.

THE COURT: Approach the bench.

THE COURT: What's the answer to your proffer?

MR. COLLINS: Your Honor, I believe the police officer would testify that he wanted to take advantage of this opportunity to arrest the Defendant, that he felt that any search subsequent to the arrest that he would find controlled dangerous substances. And that is—that was one of the reasons that he elected to arrest the Defendant on the spot rather than to go to a Commissioner and file charges.

THE COURT: What's your objection, Mr. Cooper?

MR. COOPER: Your Honor, I think obviously the information is not relevant to this case. It's prejudicial, and we feel that the stated purpose for the Defendant—for the officer's making this arrest was the Defendant was driving on a suspended or revoked license. And we feel that that has been adequately stated, and there is really no reason to get into these other matters that are extremely prejudicial and no foundation. It is speculation as to whether or not they would have found any drugs in the car. I don't think that's proper at this point.

THE COURT: Well, you questioned his tactics as to why he did certain things. I think he has a right to explain to the jury why he did it. I mean, in light of the fact that you obviously questioned him, you now, I would assume, argue to the jury he didn't have to do it. So I am going to overrule the objection and permit him to answer.

THE COURT: The objection is overruled. You may answer the question, Officer.

A. Yes, sir. The day before—the day I ran Mr. Savoy's name through the computer and found out his license was suspended or revoked, the reason I was doing that was *I received information from a source that Mr. Savoy was involved in the sale of controlled dangerous substances. And I was personally familiar with Mr. Savoy and personally familiar that he had been arrested for controlled dangerous substances because I was involved in that arrest also.* And that's the reason that we decided to stop the car at that particular time. That way we could arrest him for driving on a suspended/revoked license, and that would give us authority to search him and inside of the vehicle.

Q. And why would you search him?

A. Because I believed there were drugs in the car. *I received information the day before that he was, in fact, selling controlled dangerous substances from that vehicle and there was a good chance that he would have drugs on him.*

MR. COLLINS: I have no further questions. Thank you, Officer.

MR. COOPER: May I recross, in light of his information, Your Honor?

THE COURT: Yes.

BY MR. COOPER:

Q. You did not, when you obtained this information that the Defendant was involved in the sale of controlled dangerous substances, you did not apply for a warrant at that time; is that correct?

A. No, sir, because there wasn't enough probable cause to apply for a warrant for his arrest.

Q. But you felt if you had an opportunity to stop him on a traffic stop, that that would be pretext to search his vehicle to try to find drugs, is that basically what this boils down to?

A. If he could be arrested, which I knew he could be arrested for driving while suspended or revoked, yes.

Q. So even though you didn't get a warrant, you would just go ahead and search his car anyway; is that right?

A. No, sir, not like that. He was in violation of the law for operating his vehicle while his license was suspended or revoked. One leads up to the other. I knew if he was operating his vehicle while suspended or revoked, that gives me a right to go and search him and his person. That's why I didn't want to get a warrant for him. That would only mean he was being arrested for a less serious motor vehicle charge.

Q. What it boils down to is you were getting around the constitutional requirement of getting a warrant by making an arrest on a traffic stop?

MR. COLLINS: Objection.

THE COURT: Sustained. What the officer was doing was legal.

MR. COOPER: No further questions. (Emphasis added).

There were two other eyewitnesses who testified at the trial. Officer Riley, Coffey's partner, testified about the

attempted arrest of the appellant and the striking of Officer Coffey. The other eyewitness, Rose Shorter, testified for the defense. She stated that when Savoy drove away, she did not see anyone in front of his vehicle. Ms. Shorter testified that three shots had been fired at Savoy by an individual who had earlier been standing on the side of the Savoy car talking to him. She further testified that that same person ran back to his car and then drove after Savoy. Ms. Shorter advised the jury that although the event had occurred nearly eight months earlier, she had not reported the incident to the police because the company she worked for (C & P Telephone Company) did not want their employees to get involved in things of this nature, "because it means we miss time from work." However, after reading about the incident in the local newspaper and realizing that it was James Savoy who had been arrested, the husband of a long-time friend, she thereupon called and discussed the case with him two days prior to trial.

In this appeal, the appellant raises two issues:

1. Was the evidence sufficient to sustain the appellant's convictions?

2. Did the trial court err in allowing the State to elicit, on redirect examination of a police officer, that the appellant had been previously arrested for a drug offense and was suspected of selling illegal drugs?

## I. *Sufficiency of Evidence*

■ The appellant contends that the jury's verdict was based upon the testimony of Officers Coffey and Riley, which was directly contradicted by that of onlooker, Ms. Rose Shorter. The appellant argues that not only did Ms. Shorter testify that no one had been standing in front of the Savoy vehicle when it pulled away from the police officers, but there was no evidence to verify that Officer Coffey had suffered any injury. As was its prerogative, however, the jury chose to believe the testimony of Officers Coffey and Riley rather than that of Ms. Shorter's. *Grant v. State*, 230 Md. 384, 187 A.2d 319 (1963).

When the sufficiency of evidence for conviction is reviewed, that evidence must be evaluated in the light most favorable to the prosecution. We will reverse only if no rational trier of fact could have found beyond a reasonable doubt all the elements of the crimes. *Jackson v. Virginia,* 443 U.S. 307, 309, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979). Upon our review of the evidence, we hold that it was sufficient to allow the jury to convict the appellant as to each of the returned charges.

## II. *Propriety of Allowing Attack on Character of Non-testifying Accused*

The appellant contends that the trial court improperly allowed the prosecution to inject prejudice into the case by establishing that Savoy had been previously arrested for a narcotics violation, and was presently suspected of being involved in the sale of narcotics.

As may be recalled, Officer Coffey, on direct examination, volunteered that he had "received information about drug activity," and ran Savoy's name through a computer which indicated that Savoy's license had been suspended or revoked. That particular testimony did not relate whether Savoy had been implicated as a drug suspect, witness, an informant, or a person with relevant information. At that point, the trial court granted the defense motion to strike the testimony. On cross-examination, however, defense counsel inquired of Officer Coffey, who at the time of the attempted arrest had been in plain clothes and in an unmarked vehicle, as to his reason for attempting to affect an immediate arrest of Savoy rather than filing charges against him. In response, Officer Coffey explained that he had stopped appellant because, "I was hoping that additional charges would come out of that motor vehicle stop."

The above testimony is not challenged by the appellant. Indeed, it should not have been. What is challenged is the trial court's allowance of the State on re-direct examination of Officer Coffey to reveal Savoy's prior arrest for a drug

offense,[1] and the fact that Officer Coffey had "received information from a source that Mr. Savoy was involved in the sale of controlled dangerous substances."

■ It has been repeatedly held in Maryland that as a general rule, it is reversible error for the prosecution to attack the character of the accused before it has been put in issue by him or to show other unrelated crimes or misconduct likely to cause prejudice against him. *Straughn v. State,* 297 Md. 329, 465 A.2d 1166 (1983); *Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980); *Lowery v. State,* 202 Md. 314, 318, 96 A.2d 20 (1953); *MacEwen v. State,* 194 Md. 492, 71 A.2d 464 (1950); *Dobbs v. State,* 148 Md. 34, 129 A. 275 (1920); *Wethington v. State,* 3 Md.App. 237, 238 A.2d 581 (1968); and *Gilchrist v. State,* 2 Md.App. 635, 639, 239 A.2d 299 (1967).

■ As explained by the Court of Appeals in *Ross v. State,* 276 Md. 664, 669, 671, 350 A.2d 680 (1976):

The frequently enunciated general rule in this State, followed uniformly elsewhere, is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible. This principle is merely an application of the policy rule prohibiting the initial introduction by the prosecution of evidence of bad character. *Thus, the State may not present evidence of other criminal acts of the accused unless the evidence is "substantially relevant for some other purpose other than to show a probability that he committed the crime on trial because he is a man of criminal character."* [2]

---

1. The record does not reflect that Savoy had been convicted of that offense.

2. As observed on behalf of this Court by then Chief Judge Murphy in *Wethington v. State,* 3 Md.App. at 240, 238 A.2d 581:

Moreover, apart from the fundamental proposition that an accused may be convicted only by evidence which shows that he is guilty of the offense charged, and not by evidence which indicates his guilt of entirely unrelated crimes, there are additional reasons underlying the general rule. Evidence of other crimes may tend to confuse the jurors or prejudice their minds against the accused and to predispose them to a belief in his guilt.

. . . . .

We have said that *the introduction of evidence which shows other offenses by the accused should be subjected to rigid scrutiny by the courts because of the great potential for danger which characterizes it.* (Emphasis supplied).

The State responds that as the appellant initiated the inquiry into Officer Coffey's reason for not simply filing a charging document, Officer Coffey was allowed to relate the foundation of his motivation for attempting to arrest the appellant and search his vehicle. We agree. Furthermore, the record discloses that Officer Coffey did indeed explain his motivation when in response to the inquiry on cross-examination, he testified, "I was hoping that additional charges would come out of that motor vehicle stop." The problem area erupts into possible prejudice on re-direct when, in the form of prosecutorial icing, the State was additionally allowed to explain the specific foundation of Officer Coffey's motivation.

We dealt with the State's justification based on the theory of "opening the door," sometimes called, "curative admissibility,"[3] in *York v. State*, 56 Md.App. 222, 467 A.2d 552

---

[T]he prior conviction may be shown when it tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, (5) the identity of the person charged with the commission of a crime on trial.

**3.** 1 J. Wigmore, Evidence § 15 (3rd Ed.1940).

(1983). We stated therein that "when a defendant has opened the door to the admission of certain testimony, he is not in a position to complain about the effect later." In *York*, however, the defendant, who had testified in his own defense to a charge of armed robbery, answered a question regarding his employment status at the time of the incident and his ability to pay. On cross-examination, because the inquiry had been initiated by the defense, we held that the State was entitled to question the inferences to be drawn when it attacked the accuracy of the testimony regarding the defendant's financial status even though it is normally improper to show motive to rob because an accused may be inpecunious.

The theory of the State appears to be once an accused has "opened the door" on evidence otherwise inadmissible, it has a license to introduce all evidence to fill the gaps created by the incomplete account. As observed, however, in *United States v. Winston*, 447 F.2d 1236, 1240 (D.C.Cir. 1971):

> The doctrine is to prevent prejudice and is not to be subverted into a rule for injection of prejudice. Introduction of otherwise inadmissible evidence under shield of this doctrine is permitted "only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." *California Ins. Co. v. Allen*, 235 F.2d 178, 180 (5th Cir.1956).

As the trial judge in *Winston* expressively observed:

> This business about "opening the door" is a much overused issue and it carries with it an oversimplification. Opening the door is one thing. But what comes through the door is another. Everything cannot come through the door. This witness' testimony was certainly not in rebuttal to anything that the defendant testified to. (447 F.2d at 1240).

Similarly, in *United States v. Beno*, 324 F.2d 582, 588–89 (2d Cir.1963), it was said that:

It makes little sense to insist that once incompetent evidence is erroneously admitted, the error must of necessity be compounded by "opening the door" so wide that rebutting collateral, inflammatory and highly prejudicial evidence may enter the minds of the jurors. In short, a small advantage improperly obtained does not compel the exaction of a gross disadvantage in penalty, particularly where a tarnished verdict is the inevitable result.

■ In essence, evidence admitted under the "open door" theory does not give an unbridled license to introduce otherwise inadmissible evidence beyond the extent necessary to remove any unfair prejudice which might have ensued from the original evidence.

■ We are of the opinion that it was error for the trial court to allow Officer Coffey to "clarify" the reason for the stop by testifying that he had previously arrested Savoy on a narcotics charge, and that he had recently received information from a source linking the appellant to drug trafficking. The previous questioning on cross-examination did not mandate an outlet for the introduction of specific past unrelated criminal conduct of the accused when he had not placed his character in issue.

■ We need next consider the impact of the error. Reversal of the conviction is required unless the State can show beyond a reasonable doubt that the error did not contribute to the conviction. As observed on behalf of the Court by Judge Levine in *Ross v. State*, 276 Md. at 674, 350 A.2d 680 (1976):

The essence of this test is the determination whether the cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded.

Applying this test to the facts *sub judice*, we cannot conclude that the error was harmless. Had the appellant been charged with and convicted of criminal offenses in the

nature of obstruction of justice, such as resisting arrest, disobeying the lawful order of a police officer, or fleeing to elude a police officer, or of a traffic offense such as driving while his license was suspended or revoked, the evidence of guilt would have been so overwhelming that there would have been no reasonable possibility of a different result had the improper evidence been excluded. Here, however, there was conflicting evidence as to whether Officer Coffey, who was not injured, was directly in front of the appellant's car when the appellant suddenly accelerated and sped away. The appellant was charged with and convicted of what amount to an aggravated assault upon Officer Coffey. The issue was not whether he fled to avoid arrest but whether he intentionally ran into the officer. The fact that the tainted evidence portrayed Savoy as a "bad man," a drug dealer, may well have tilted the balance against him on that key issue in the eyes of the jury.

JUDGMENTS REVERSED AND CASE REMANDED FOR NEW TRIAL.

COSTS TO BE PAID BY CHARLES COUNTY.