503 A.2d 725

**Jacqueline Camille ROBINSON**

v.

**STATE of Maryland.**

**No. 324, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Feb. 5, 1986.

Edward P. Camus (Camus & Perry, on brief), Riverdale, for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Arthur A. Marshall, Jr., State's Atty. for Prince George's County and Joan S. Lieberman, Asst. State's Atty. for Prince George's County, Upper Marlboro, on brief), for appellee.

Argued before MOYLAN, KARWACKI, and ROBERT M. BELL, JJ.

MOYLAN, Judge.

The appellant, Jacqueline Camille Robinson, was convicted by a Prince George's County jury, presided over by Judge Howard S. Chasanow, of 1) assault with intent to disable and 2) the use of a handgun in the commission of a felony. Upon this appeal, she raises four contentions:

1) That the evidence was not legally sufficient to sustain the convictions;

2) That Judge Chasanow erroneously refused to give a requested instruction on accidental shooting and erroneously instructed the prosecutor to clarify the concepts of specific intent to murder and specific intent to disable;

3) That the opening statement of the prosecuting attorney amounted to prosecutorial misconduct; and

4) That Judge Chasanow erroneously limited the cross-examination of a State's witness.

The appellant's fourth contention, imperfectly preserved but partially salvaged for appellate review, involves a subtle and interesting point of evidence—one of the less routine exceptions to the Hearsay Rule. There is nothing to the first three contentions, and we will dispose of them summarily to clear the deck for a fuller consideration of the fourth.

## LEGAL SUFFICIENCY OF THE EVIDENCE

We have reviewed the evidence and find it legally sufficient to support the convictions. The appellant, at the time of the shooting, was a medical student at the Howard University Medical School where the victim, Dr. Henry Lloyd Garvey, was a Professor of Pharmacology. Although Dr. Garvey was married, there was a romantic liaison between himself and the appellant, punctuated by several domestic quarrels in the weeks immediately preceding the shooting. On September 3, 1984, the appellant shot Dr. Garvey in the upper thigh. Dr. Garvey drove himself to the hospital, where surgery revealed that the bullet had entered and exited his thigh and then entered his abdomen, causing extensive bleeding. Several months later, Dr. Garvey suffered a stroke which prevented him from appearing at the trial or testifying. Despite the appellant's self-serving explanation that the shooting was an accident as she and her estranged lover struggled for possession of her gun in the course of an argument, the fact finders had it within their unfettered prerogative to disbelieve utterly that expla-

nation. The physical circumstances of the shooting, buttressed by other surrounding circumstances, clearly established a *prima facie* case with respect to both convictions.

Those other surrounding circumstances, indeed, carried the State's burden of production far beyond that barely minimal level necessary to support a *prima facie* case. Officer Douglas Betman, a Takoma Park City policeman, testified that he and another officer responded to the appellant's apartment toward the end of July after a neighbor had reported "a lot of crying coming from" the apartment. Responses received from the appellant on that occasion indicated to the officers that there had been a "domestic problem, crying over a problem with a boyfriend or something." Officer Betman testified to another incident approximately three weeks before the shooting when he again responded to the appellant's apartment for "screaming and crying" and "a loud disturbance." Finding the appellant alone, screaming and crying hysterically, he asked what was wrong and received the reply that, "it was her boyfriend."

Even more damaging testimony came from Victorine Patricia Garvey, the shooting victim's wife of eleven years. She testified to having received a telephone call at her place of employment on August 7, 1984, and "about three times subsequent" from the appellant. The appellant told Mrs. Garvey that she wanted her to leave her husband, that the appellant had been seeing Dr. Garvey for quite awhile, and that she had no intention of giving him up. Mrs. Garvey testified to another call on August 21 wherein the appellant asked if Mrs. Garvey had signed divorce papers and wherein the appellant informed Mrs. Garvey that she, the appellant, was pregnant. In a third call on August 31, the appellant asked Mrs. Garvey if she was "going to New York with Lloyd this weekend" and telling her that "if you go to New York and you spend the weekend with him this weekend, when you get back, you'll be sorry."

On September 3, three calls came in from the appellant asking to speak to Dr. Garvey. In one of them, the appellant told Mrs. Garvey that she had "some unfinished business to discuss with him and that if I didn't put him on and let him talk to her, I would be sorry." At about 8:30 that evening, the telephone rang again and was answered by Dr. Garvey, who left the home ten or fifteen minutes after the telephone conversation.

Under all of the circumstances, it is to state the self-evident to hold that Judge Chasanow was not in error in submitting the case to the jury. *Williams v. State*, 5 Md.App. 450, 459, 247 A.2d 731 (1968); *Metz v. State*, 9 Md.App. 15, 23, 262 A.2d 331 (1970).

## JURY INSTRUCTIONS

The second "contention" consists of two essentially unrelated subcontentions, the only common thread being that they both relate to jury instructions.

■ With respect to the appellant's requested instruction on the excuse of accident, it is well settled that if the instruction actually given adequately covers the subject, no particular additional instruction and no particular version of the instruction is necessary. In this case, Judge Chasanow fully and correctly instructed the jury that the crime of assault with intent to disable required a finding that there was a "deliberate, intentional wounding," with the "specific intent to incapacitate or physically impair the victim" without "any legal excuse or justification." It is clear beyond doubt that an accidental shooting would not satisfy that stringent *mens rea* requirement. It is not necessary to reiterate in negative terms what is already fully and adequately expressed in affirmative terms.

The other subcontention is that Judge Chasanow somehow erred "in delegating to the prosecutor [the court's] duty to instruct the jury by requesting ... that the prosecutor clarify to the jury the concept of specific intent to

commit assault with intent to murder and assault with intent to disable." The short answer to this subcontention is that whatever transpired in this regard at an off-the-record bench conference at the conclusion of the State's argument, nothing has been preserved for appellate review. Following the bench conference, no record of which is before us, the prosecuting attorney addressed the jury again, briefly but quite accurately, on the mutually exclusive natures of a specific intent to kill and a specific intent to disable. There was no objection by the appellant before this brief reargument, during the reargument, or following the reargument. The merits of what may or may not have happened are not before us, and we decline to consider them, even assuming we could. Nothing has been preserved for appellate review. Md.Rule 1085; *Fowler v. Benton*, 229 Md. 571, 575, 185 A.2d 344 (1962).

## PROSECUTOR'S OPENING STATEMENT

Our answer is the same with respect to the appellant's untimely claim that the prosecutor was guilty of misconduct in the course of his opening statement. The prosecutor, of course, cannot commit error as "error" is used as an appellate term of art. Only the judge can commit error when he, called upon to rule, omits to rule or makes an incorrect ruling. *Braun v. Ford Motor Company*, 32 Md. App. 545, 548, 363 A.2d 562 (1976); *Ball v. State*, 57 Md.App. 338, 358–360, 470 A.2d 361 (1984). In this regard, the appellant did not call upon the judge at any time to do anything. Ordinarily, with rare exceptions not here pertinent, there could be no error.

## THE "STATE OF MIND" EXCEPTION TO
## THE HEARSAY RULE

The final contention, which the appellant boldly poses as a constitutional issue without significantly maintaining it at that lofty level, is more accurately a problem of common

law evidence.[1]   The State produced Deputy Sheriff James
E. Turner, Jr., who had an off-duty job as a part owner of a
gun shop.   Mr. Turner testified that the appellant applied
for a permit to purchase a handgun on August 4, 1984, and
that, following the successful processing of her application,
picked up the handgun on September 1, 1984.   On the
cross-examination of Mr. Turner, the appellant asked the
following questions, to which the State's objections were
sustained:

> "Q.   All right, sir.   Did Miss Robinson tell you that she
> was purchasing a gun to protect herself?
>
> Ms. Lieberman:  Objection.
>
> The Court:  Sustained.
>
> By Mr. Camus:
>
> Q:  Did you tell Officer Betman that Miss Robinson
> stated to you she was purchasing the gun to protect
> herself?
>
> Ms. Lieberman:  Objection.
>
> The Court:  Sustained.
>
> By Mr. Camus:
>
> Q:  Did Miss Robinson tell you why she was buying the
> gun?
>
> Ms. Lieberman:  Objection.
>
> The Court:   Mr. Camus, I have sustained the objection to
> that whole line of questioning, not the
> phraseology.
>
> Mr. Camus:   All right.   That is all I have."

The line of questioning that was thus curtailed obviously
looms far larger now than it did then.   The response, "All

---

1.   Probably the greatest sin of the appellate defense bar today is its
tendency to "overconstitutionalize" virtually everything.   A good,
meaty problem of common law evidence, involving the Hearsay Rule
and its exceptions, need not be framed in terms of the Sixth Amend-
ment's right to confrontation, unless one is prepared to argue that
there is involved one of those rare, but hypothetically conceivable,
situations where proper compliance with the Hearsay Rule could
nonetheless represent a violation of the right to confrontation.   Such
an issue is not remotely before us here.

right. That is all I have," has evolved, through many months of hindsight, into three separate and arcane theories of exemption from the foreclosing effect of the Hearsay Rule. The obvious reason for the State's objections and the obvious reason for the sustaining of those objections was that the evidence solicited was clearly hearsay. Mr. Turner was being asked about out-of-court assertions made to him by the appellant which were then being offered in court for the truth of the thing asserted: to wit, that the appellant wanted the gun for her own protection, ostensibly from burglars and robbers. Notwithstanding the appellant's essential acquiescence in the rulings of Judge Chasanow when they were made, she now offers three separate and reasonably subtle theories of admissibility, none of which was made at the time and only one of which was made even in the course of the appellant's hearing on a motion for a new trial. Ordinarily, we would rely totally on *Braxton v. State*, 57 Md.App. 539, 549–550, 470 A.2d 1327 (1984), wherein we held:

"Accordingly, we hold that refusal to permit an answer to a question which on its face called for hearsay (a self-serving declaration) is not error where trial counsel fails to show that the purpose of the question is to elicit non-hearsay or evidence which would be considered as an exception to the hearsay rule."

■ Indeed, with respect to the two theories of admissibility which were never even obliquely urged before Judge Chasanow and which were sounded for the first time in appellate brief and argument, we are content to rely upon *Braxton* in holding that they have not been preserved for appellate review.

One of those theories is urged under the so-called doctrine of "curative admissibility." *Robinson v. State*, 53 Md.App. 297, 452 A.2d 1291 (1982).[2] The other theory is

---

**2.** While resting our holding on nonpreservation, we nonetheless note in passing that the doctrine of "curative admissibility," even where accepted (*but see Robinson v. State, supra,* at 53 Md.App. 305, 452 A.2d

urged under the "doctrine of verbal completeness." [3]   With respect to both theories, now offered for the first time, we see no difference between this and the situation before us in *Braxton v. State*, at 57 Md.App. 549, 470 A.2d 1327, where we declined to rule upon issues and theories of admissibility that had not been presented to the trial court:

> "[W]e note that at no time did defense counsel advise the court that he was offering the Stevie Williams testimony not for the truth of appellant's response but in order to impeach the testimony of Lindsay Blackwell. *See, e.g., Smith v. State*, 273 Md. 152, 161, 328 A.2d 274 (1974). Neither did defense counsel suggest to the court that the alleged denial was being offered as an exception to the hearsay evidence rule or under the doctrine of verbal completeness.... Therefore, appellant's present theory

---

1291, is a very limited "equalizer," whereunder one party is sometimes permitted to offer otherwise inadmissible evidence in response to other inadmissible evidence which has been introduced by his adversary. In the case at bar, there was nothing remotely inadmissible or incompetent about the circumstantial evidence offered by the State to show that the appellant had had an argument with her "boyfriend" in July, had subsequently applied to purchase a handgun on August 4, had taken possession of the handgun on September 1, and shot the "boyfriend" on September 3. Even in jurisdictions recognizing it, the doctrine of "curative admissibility" only comes into play when necessary to counter *inadmissible* evidence offered by the opponent, not to counter admissible evidence. 1 J. Wigmore, *Evidence*, § 15 (3d ed. 1940). We will not go into an extended analysis of this doctrine, because of our reliance on nonpreservation. *See especially, Savoy v. State*, 64 Md.App. 241, 252–254, 494 A.2d 957 (1985).

3.   Although again resting our holding on nonpreservation, we nonetheless note in passing that the State never sought to offer through Mr. Turner any statement from the appellant as to why she was applying for the permit to purchase and own a gun, and the notion that the whole statement must come in to give context to a part of it is, therefore, inapplicable. *White v. State*, 56 Md.App. 265, 467 A.2d 771 (1983), relied upon exclusively by the appellant, deals with the relevance of the proffered evidence to show the fuller context of other evidence already before the court, not with its competence. Again, however, an extended analysis will not be engaged in because of our reliance on nonpreservation. An excellent discussion of the tight limitations on this doctrine is found in *Feigley v. Baltimore Transit Company*, 211 Md. 1, 9, 124 A.2d 822 (1956).

of admissibility was neither tried nor decided by the trial judge and we ought not consider it. *See Brown v. State,* 1 Md.App. 571, 576, 232 A.2d 261, *cert. denied,* 248 Md. 733 (1967); Maryland Rule 1085. One of the principal purposes of this rule is to require counsel to bring the position of their clients to the attention of the lower court at the trial, so that the trial court can pass upon and possibly avoid or correct any errors in the proceedings."

■ With respect to the appellant's third theory of admissibility, however, we are willing to consider it on the merits. Notwithstanding the failure of the appellant to articulate a theory of exemption from the Hearsay Rule or to make a proffer of what the answer to the question would probably have been at the time when the objection to the question was initially sustained, Judge Chasanow very candidly made it clear, at the subsequent hearing on the new trial motion, that he had fully understood the theory under which the appellant had been offering the testimony:

"Now, with regard to the specific evidentiary issue, Deputy Turner was asked when the defendant came in to apply for authorization to purchase a gun, which was almost a month before the actual shooting, if she indicated that she wanted a gun for protection. That issue is certainly preserved. I think there was certainly enough of a proffer that I knew what the answer would be. So, Mr. Camus, you can't say that you failed to protect the record. I will say for the record I fully anticipated the answer would be, 'Yes, she said that she wanted to purchase the gun for protection.' So, I just want to make it clear there is no procedural deficit in this case ..."

The underlying purpose for the insistence on timely objection is to alert the trial judge to the fact that an issue is before him for decision. Where, as here, it is clear that the trial judge was so alerted, a rigorous insistence on timely objection would serve no purpose and would simply exalt form over substance.

We turn, therefore, to the "state of mind" exception to the Hearsay Rule. It was not until the filing of her reply brief that the appellant pinpointed precisely this theory of admissibility, but it does seem clear that she was groping in this direction from the beginning. The "state of mind" exception is part of a cluster of related exceptions that have arisen in the zone that some writers call the "borderland of hearsay." Professor Edmund Morgan, both in *A Suggested Classification of Utterances Admissible as Res Gestae*, 31 Yale L.J. 229 (1922) and *Res Gestae*, 12 Wash.L.Rev. 91 (1937), pointed out that the now repudiated notion of *res gestae* had a rough utility because it embraced seven classes of cases in which out-of-court declarations were deemed admissible. He pointed out further that three of those classes dealt with verbal acts and circumstantial evidence that were not hearsay at all and that four other classes dealt with legitimate exceptions to the Hearsay Rule. These four now possess distinct identities as 1) excited utterances, 2) declarations of bodily feelings, 3) declarations of mental state, and 4) present sense impressions, although until relatively recent times they were covered by the amorphous umbrella term *"res gestae."* C. McCormick, *Law of Evidence* (2d ed. 1972), groups together in Chapter 29, "Spontaneous Declarations," almost as did Morgan, several instances of nonhearsay, declarations of bodily feelings, declarations of mental state, excited utterances and present sense impressions. Our concern is with the single one that Professor Morgan calls "declarations of mental state." [4]

---

**4.** *See also* Rice, *The State of Mind Exception to the Hearsay Rule: A Response to " 'Secondary' Relevance,"* 14 Duq.L.Rev. 219 (1976); Seidelson, *The State of Mind Exception to the Hearsay Rule,* 13 Duq.L. Rev. 251 (1974); Slough, *Spontaneous Statements and State of Mind,* 46 Iowa L.Rev. 224 (1961); Hinton, *States of Mind and the Hearsay Rule,* 1 U.Chi.L.Rev. 394 (1934); Hutchins & Slesinger, *Some Observations on the Law of Evidence—State of Mind in Issue,* 29 Colum.L.Rev. 147 (1929); Hutchins & Slesinger, *Some Observations on the Law of Evidence—State of Mind to Prove an Act,* 38 Yale L.J. 283 (1929).

Even the limited exception "declaration of mental state" is not monolithic, but embraces two subspecies: 1) a declaration of present mental or emotional state to show a state of mind or emotion in issue, and 2) a declaration of intention offered to show subsequent acts of declarant. Although our affirmance of Judge Chasanow would remain the same regardless of which of these two subspecies of the exception was before the court, we think that the clearly applicable one was the former, a declaration of present mental state to show a state of mind in issue. As McCormick points out, at 694, "The substantive law often makes legal rights and liabilities hinge upon the existence of a state of mind in a person involved in the transaction at issue. When this is so and a legal proceeding arises from the transaction, the mental state of the person becomes an ultimate object of search." This variety of evidentiary law arose largely from civil cases dealing with, *e.g.*, declarations of intent to make a certain place the declarant's home offered to establish domicile, declarations expressive of mental suffering to prove that element of damages, declarations of intent to revoke a will, declarations of willingness to allow one the use of the declarant's automobile, etc. It nonetheless has obvious application to the criminal law.

The mental state in issue in the instant case is the *mens rea* of the appellant when she pulled the trigger. Did the gun discharge accidentally or was it fired with a malicious intent, homicidal or otherwise assaultive? The state of mind that accompanied the trigger pull was, indeed, the only issue in the case.

When the admissibility of this declaration by the appellant was more fully argued by the appellant at the hearing on the new trial motion, Judge Chasanow gave two reasons for having earlier sustained the State's objection. One was based upon lack of relevance due to remoteness. The other was based upon lack of trustworthiness. Either reason, standing alone, would have justified the ruling and would dictate our affirmance. We largely agree with Judge Cha-

sanow with regard to the first reason and totally agree with him with regard to the second.

Clearly, the appellant's declaration of August 4 as to her state of mind on that day did not go directly to show anything about her state of mind on September 3 when the shooting occurred. Only the state of mind on September 3, of course, qualifies as the ultimate "state of mind in issue." Strict contemporaneity is not, however, absolutely required. As McCormick points out, at 695–696:

> "Although it is required that the declaration describe a state of mind or feeling existing at the time of the declaration, the evidentiary effect of the declaration is broadened by the notion of the continuity in time of states of mind. For example, if a declarant tells on Tuesday of his then-existing intention to go on a business trip for his employer the next day, this will be evidence not only of his intention at the time of the declaration but also of a similar purpose the next day when he is on the road."

The case law legitimizing the admission of declarations based upon this "notion of the continuity in time of states of mind" almost universally imposes very tight limits on the lapse of time involved. We have found no case, and the appellant points us to none, extending this notion of continuity over any period even approaching the thirty days here between August 4 and September 3. McCormick addresses this notion of relevance being strained beyond the breaking point, at 696:

> "Since, however, the duration of states of mind or emotion varies with the particular attitudes or feelings at issue and with the cause, it is reasonable to require as a condition of invoking the continuity notion that the declaration mirror a state of mind which, in light of all the circumstances including proximity in time, has some probability of being the same condition existing at the material time. Where there is room for doubt, the matter should be left to the discretion of the trial judge."

Obviously in the present case, there was "room for doubt." The matter, therefore, was appropriately "left to the discretion of the trial judge." Judge Chasanow, within that broad discretionary range wherein he could have gone either way and been affirmed in either event, exercised his discretion:

"That coupled with the time of the application, which was again some 30 days prior to the actual shooting, would also seem to indicate that a state of mind on August 4th would not be particularly relevant to a shooting on September 3rd. Regardless of what her state of mind was the moment she purchased the weapon, it would not seem to have that much relevance to her state of mind the moment she used the weapon some 30 days later."

With respect, therefore, to the ruling that a state of mind on August 4 was too remote in time to be relevant to the state of mind in issue on September 3, we perceive no abuse of discretion. Our only hesitation in appearing to give blanket approval to the ruling based upon irrelevancy is that the appellant, although she never cleanly did so, might have argued with some plausibility that her state of mind on August 4 took on a secondary relevance of its own when the State placed it in issue. In negating any idea that the discharge of the gun on September 3 might have been accidental, the State established a strong circumstantial web of guilt around the appellant. It showed that she had begun to have domestic problems with Dr. Garvey as early as July, applied to purchase a gun shortly after the onset of those difficulties, became increasingly distraught and desperate through the month of August, took possession of the gun on September 1, and used it on September 3. The clear import of the State's case, in demolishing the notion of an accidental shooting, was that the appellant harbored a malicious intent as early as August 4. Under the circumstances, the appellant might well argue that any *competent* evidence tending to negate that inference of malicious in-

tent had relevance of its own. As we have said, however, the appellant never cleanly articulated this theory.

It would make no difference to our ultimate holding if it had been articulated, however. Even if the appellant were able to overcome the evidentiary impediment of irrelevance, there would still loom the insurmountable evidentiary hurdle of untrustworthiness.

The case law and the opinion writers are unanimous that with respect to this and any other spontaneous declaration, there must be assurances of reliability. 6 J. Wigmore, *Evidence* (3d ed. 1940), § 1725, at 80, points out that such declarations, "must appear to have been made in a natural manner and not under circumstances of suspicion." McCormick speaks to the same requirement, at 695:

"The special assurance of reliability for declarations of present state of mind rests, as in the case with declarations of bodily condition, upon their spontaneity and probable sincerity. This is assured by the requirements that the declarations must purport to relate to a condition of mind or emotion existing at the time of the statement and must have been made under circumstances indicating apparent sincerity."

The point of departure with respect to the Hearsay Rule is that hearsay is inadmissible. The burden falls upon the proponent of the hearsay to satisfy the trial judge that all necessary conditions have been met to qualify for one of the exceptions to the Hearsay Rule. In this regard, the trial judge is frequently called upon to engage in fact finding—not ultimate fact finding, to be sure, but ancillary fact finding indispensable to making a ruling on admissibility. Judge Chasanow's findings and ruling on the question of trustworthiness were clear:

"I don't think this was a sufficiently reliable act to indicate a state of mind. The act of purchasing a gun is not in any way a spontaneous act. It is something that a person does with some deliberation. I don't think that a person when asked or when volunteering why they pur-

chased a gun would indicate that they were doing it for the purpose of a homicide, if that was their purpose. So, I don't feel that this had the spontaneity that usually accompanies a declaration of state of mind. I don't feel that that response would have sufficient trustworthiness to come in under the hearsay exception. I think it is a calculated response, that regardless of the state of mind, would be given under the circumstances of applying to purchase a weapon."

The burden was squarely placed upon the proponent of the hearsay to persuade Judge Chasanow that it was trustworthy. The appellant failed to persuade him. Based upon that "sense" that the proffered hearsay was untrustworthy, the ruling that it was inadmissible inevitably followed. Again, we perceive no abuse of discretion.

None of the four Maryland cases cited by the appellant persuades us otherwise. *Maryland Paper Products Co. v. Judson,* 215 Md. 577, 139 A.2d 219 (1958), dealt with a declaration of intention made by a decedent to his wife as he left for work on the morning of the accident. Under circumstances involving no scintilla of suspicion, the husband was explaining that it was necessary to go to work notwithstanding near hurricane weather because he had to pick up a gear wheel for the company on his way to work that morning. The admissibility of that absolutely trustworthy declaration in no way erodes the inadmissibility of the declaration before us that was found to be untrustworthy. The *Judson* opinion, indeed, reaffirms the necessity of finding that such declarations, to be admissible, must "have been made in a natural manner and not under circumstances of suspicion." 215 Md. at 590, 139 A.2d 219.

In *Bartell v. Bartell,* 28 Md.App. 180, 344 A.2d 139 (1975), *rev'd in part and vacated in part on other grounds,* 278 Md. 12, 357 A.2d 343 (1976), we held simply that a trial judge was in error as a matter of law when he failed to recognize the "declaration of intent" as a legitimate exception to the Hearsay Rule and was further in

error as a matter of law when he ruled that statements were automatically excluded if they were "of a clearly self-serving nature." [5] That case involved domiciliary intent. In the course of his discussion for this Court, Judge Moore reaffirmed that such declarations, to be admissible, are circumscribed by "the usual limitations as to remoteness in time and apparent sincerity common to all declarations of mental state." 28 Md.App. at 193, 344 A.2d 139.

In *Lapelosa v. Cruze*, 44 Md.App. 202, 407 A.2d 786 (1979), we simply "agree[d] with the trial judge's ruling that the proffered testimony did not fall under the 'state of mind' exception to the hearsay rule." 44 Md.App. at 209.

*Santoni v. Moodie*, 53 Md.App. 129, 452 A.2d 1223 (1982), dealt with contributory negligence and the foreseeability of risk on the part of the decedent. Our holding was simply to the effect that statements made by the decedent to his wife in the privacy of their home on the subject of his treatment for tuberculosis were so inherently trustworthy that their rejection from evidence was error. We quoted with approval Massachusetts Justice Oliver Wendell Holmes in *Elmer v. Fessenden*, 151 Mass. 359, 361–362, 24 N.E. 208 (1890), in stating that such declarations are admissible when they are "made with no apparent motive for misstatement." 53 Md.App. at 149, 452 A.2d 1223.

Trustworthiness is the key. The appellant did not persuade the trial judge that the declaration in question was

---

**5.** The limited nature of that holding should be made very clear. We held that the fact that an out-of-court declaration was self-serving was not something that would make it, if otherwise qualified, inadmissible as a matter of law. That holding by no means implied that the self-serving nature of the declaration would not be a legitimate factor to be considered by the trial judge, however, in making his necessary assessment of trustworthiness. That a declaration is self-serving, therefore, may be fatal to its admissibility as a matter of fact, but will not be fatal to its admissibility as a matter of law. It is left rather in the hands of the trial judge in his limited fact finding capacity on this ancillary issue and in his ultimate exercise of discretion on evidentiary admissibility.

trustworthy. It was, therefore, incompetent as evidence and should not have been received.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.